[No. 12076.  Department One. — September 28, 1887.]

# HARRIET DOWER, APPELLANT, *v.* PHILIP RICH-ARDS, RESPONDENT.

MINING CLAIM — TOWN-SITE PATENT — QUARTZ LEDGE WITHIN LOT — TUN-NEL UNDER LOT. — An owner of a lot of land under a town-site patent issued by the United States prior to the passage of the act of 1872, regu-lating the width of quartz-mining claims, in which lot a gold quartz ledge was known to exist at the date of the patent, has an absolute title in fee-simple to the land not actually included in the quartz ledge; and a third person, for the purpose of working the quartz ledge, has no right, without the consent of the owner, to run a tunnel under the portion of the land not included in the ledge.

ID. — PERMISSION TO CONSTRUCT TUNNEL — WANT OF CONSIDERATION. — A permission to construct such a tunnel, given by the owner of the lot to the person working the quartz ledge, without any consideration therefor, is not binding upon the owner, or his subsequent grantee.

APPEAL from a judgment of the Superior Court of Nevada County.

The facts are stated in the opinion.

*H. L. Gear*, for Appellant.

*Gaylord & Searls*, and *Cross & Simonds*, for Respondent.

FOOTE, C.—Richards was the owner of a lot of ground which he claimed and held by a deed of conveyance from a Mrs. Bigelow, who had acquired it with other land, under the town-site patent of the city of Nevada, issued in the year 1869, by virtue of the provisions of chapter 32 of the Revised Statutes of the United States.

The plaintiff had run a tunnel under this lot, claiming that she had a right to do so, because, as she alleged, in such way only could she reach and work a "gold mine" situated within said lot, and known to exist at the date of the town-site patent, under which said lot was held and claimed. As a consequence, a well belonging to the defendant, located on that lot several hundred feet from the tunnel, had become drained of its water, and to re-

store the water to the well the defendant caved in the plaintiff's tunnel at a point where the latter claimed it had reached a spur of the quartz ledge or "gold mine." Because of the alleged trespass of the defendant in digging in his own lot in such a way as to cave in the tunnel of the plaintiff, and to recover the damages resulting therefrom, the latter instituted this action. The cause was tried by a jury, who returned a verdict for the defendant, and from the judgment rendered thereupon this appeal is prosecuted. A bill of exceptions presents the grounds relied on to reverse that judgment.

The main points made in support of the plaintiff's contention are:—

1. That the court erred in its instruction to the jury numbered "one."

2. That it refused to grant twelve instructions requested by the plaintiff.

The instruction first mentioned is as follows:—

"The jury is instructed that if they believe from the evidence that the place where Philip Richards caved in the tunnel was upon ground to which he had previously derived title under the town-site patent of the city of Nevada, and that such place was not upon any mining or tunnel possession held at the date of, or prior to the date of, such town-site patent, then the jury should find for the defendant, unless you find the acts of the defendant in filling up the tunnel were done through malice and oppression."

It is very plain that the United States, in granting the patent under which the defendant held and possessed his lot, reserved to itself the title to any "gold mine" which might be known to exist in any part of that lot (U. S. R. S., 2d ed. 1878, sec. 2392, p. 438,), and the plaintiff urges that as a consequence, the government, or any one authorized by it to explore such gold mine, may tunnel under a lot granted by a town-site patent dated in the year 1869, and drain the water from a well situated on

that lot, if it be necessary to the reasonable and proper construction of that tunnel, even if while so doing there be no gold mine existing in that part of such lot under or in which the tunnel runs.   That is to say, she claims the right for her own private purposes to make use of and run a tunnel in the land of another, and drain his well of water, because in some part of said lot there is a gold mine which was known to exist prior to or at the time the patent was issued under which the defendant claims, and which can only be reached by such tunnel running through another part of that lot in which there is no mine.

Is not this an effort on the part of the plaintiff to appropriate the private property of the defendant to the private use of plaintiff? Is it not an enterprise to be conducted solely for her personal profit?

At the time when the patent to the town site was granted, that is, in the year 1869, Congress had not passed the act of 1872 (R. S., sec. 2320) giving a width to quartz-mining claims of not exceeding three hundred feet on each side of the center of the croppings of the ledge.   So that there was then existing no law of the United States which prescribed the method by which a "gold mine" could be prospected and worked; and as the law then stood, it reserved the title to such mine in the government, but went no further.   The grant, then, by the town-site patent carried an absolute fee-simple title to the grantee, and those claiming under it, of all land in which "no gold, silver, copper, or cinnabar mine" existed, or in which no valid mining claim or possession was had or held under local authority, or rules, or existing laws.   (U. S. R. S., secs. 2386, 2392.)

It would therefore appear that the defendant had an absolute fee-simple title to all that part of his lot which had been tunneled prior to the draining of his well, and that the plaintiff had no right, in the absence of any contract with the defendant, to dig that tunnel, and that

the defendant did no wrong and committed no trespass in caving it in. For it cannot be (in the absence of any law of the United States reserving rights to work gold mines in a specific way) that a mere reservation of the title to such a mine in a patent in any way limits the title which it passes to that portion of the land in which no mine exists. And the grantee takes under the town-site patent all the land it describes by an absolute title in fee-simple, excepting only such portion as may contain a mine of gold, silver, cinnabar, or copper, or mining claim or possession which may be held under local authority or existing laws.

For example, an individual owns a town-site lot which is three hundred feet square; there is in a corner of that lot a gold mine embedded in the ground in the shape of a quartz ledge; the gold mine only occupies a space say ten feet square. In the absence of any legislation by Congress before or at the time when this patent including that lot is issued, stating how that mine shall be worked, or of any valid state law to the same effect authorized by Congress, the owner of the lot under the patent holds all the ground save that part in which the mine is located by a fee-simple title, and, without some law in accordance with the constitution of the state and of the United States, no man can tunnel under the part of the lot held by this title in fee-simple, except by contract with the owner.

This use attempted to be obtained by the plaintiff in tunneling the defendant's land was not a public use, and no valid state law authorizes it. (*Consolidated C. Co.* v. *C. P. R. R. Co.*, 51 Cal. 269.)

As we have seen, no law of the United States gave it, as the patent issued in 1869, when no legislation had been had as to the manner of working gold mines. The right to three hundred feet of ground on each side of a quartz ledge was not granted until the passage of the act of 1872. (R. S., sec. 2320.)

We are of opinion that instruction 1 was correctly given, in so far as it did not inform the jury, as the appellant claims it should have done, that the plaintiff had a right to run her tunnel under the defendant's land in a reasonable and proper manner, in order to reach and work the gold mine which lay in another part of said lot.

But the appellant makes a further point on that instruction; she claims that it did not submit to the consideration of the jury a material issue, which was. whether or not the defendant's vendor, Mrs. Bigelow, had given to the plaintiff (before her sale of the lot to defendant) the right to run the tunnel as she did. It nowhere appears, either as alleged in any pleading, or in evidence, that any consideration whatever moved from the plaintiff to Mrs. Bigelow or the defendant, which would support any such agreement; hence the allegation as made in the pleading and its denial did not raise any material issue upon which the jury should have been called to pass. And an instruction on the point was unnecessary.

The whole twelve instructions asked for by the plaintiff, and refused by the court, are expressed in such a way as that, taken altogether, the jury must necessarily have been impressed with the idea that the court intended to say to them that if they believed there was " a gold mine " in any part of the defendant's lot, that the title thereto being reserved to the government and not vested in the defendant, the plaintiff had a right to run her tunnel as she did, the defendant had no right to cave it in, and was therefore liable in damages. The instructions would have misled the jury, and were properly refused.

As we have before said, the defendant owned in fee-simple the whole of the lot to which he had a conveyance, except the part in which the alleged " gold mine " lay. There was no valid law of state or United States

existent which at the time of the issuance of the town-site patent prescribed any method of working a "gold mine" so situated. Therefore the title to the gold mine and its *locus* remained in the United States government, but that government not having legislated so as to impose any method of working said mine as a condition or restriction upon the fee-simple holding of the part of the lot where there was no gold mine, the owner of the lot held it absolutely, subject only to the right which might be given by a constitutional state law to condemn it for a public use.

We perceive no prejudicial error in the record, and the judgment should be affirmed.

Belcher, C. C., concurred.

The Court.—For the reasons given in the foregoing opinion, the judgment is affirmed.

Hearing in Bank denied.