[Sac. No. 1453. In Bank.—January 23, 1908.]

# COUNTY OF SUTTER, Respondent, v. WILLIAM NIC-OLS, Appellant.

NUISANCE — HYDRAULIC MINING — DEPOSIT OF DEBRIS — INJUNCTION—JURISDICTION—CONGRESSIONAL COMMISSION.—The jurisdiction of the state courts to enjoin a nuisance caused by persons engaged in hydraulic mining permitted by the California Debris Commission, established under the act of Congress of March 1, 1893, under restraining works constructed by the consent and approval of the commission, but which have proved insufficient to restrain the debris, which has been deposited upon lands belonging to the plaintiff county, to the great injury of its property, is not affected by the action of such commission pursuant to said act of Congress.

ID.—ACTION OF DEBRIS COMMISSION NOT JUDICIAL NOR CONCLUSIVE—PRIVATE BENEFITS OF MINER.—It is essential, in order to make the action of a special tribunal in the matter of improvements conclusive, that the thing to be accomplished shall be a matter of public concern and for the public benefit. The action of the debris commission is not judicial or conclusive, since the business of mining for the benefit of the mine owner is a private affair, carried on by him for his own personal profit.

ID.—POLICE POWER—LIMITS OF LAW—INJURY TO OTHERS.—Laws may be enacted in the exercise of the police power, requiring the miner to use all reasonable precautions and means to prevent injury to others, or the obstruction of navigable streams by the deposit of debris therein, and to ascertain and devise the means best adapted to that end. But the law is powerless to declare that the observance of such means or precautions shall exonerate him from liability if, notwithstanding their use, injury is caused to others by the discharge of debris in such streams.

ID.—OUTPUT OF GOLD—GOLD STANDARD.—The output of gold from a mine held in private ownership, and which is the private property of the owner, whatever effect it may have to increase the general output of gold toward the maintenance of the gold standard, does not make it a public purpose, for which the private property of others may be taken, or its injury lawfully authorized, by such owner.

ID.—PROVISION FOR NOTICE AND HEARING—OWNERS OF LANDS NOT ESTOPPED.—The provision in the act of Congress directing notice to be given, and authorizing a hearing, at which all parties interested may appear, were not intended to conclude and estop the owners of lands below with respect to subsequent injuries that might be inflicted, but were designed to enable the commission to obtain all aid which it can derive from the suggestions of all interested persons, including those who might believe their property to be in danger, in order that it would be better advised as to the means and plans necessary to avoid injury.

APPEAL from a judgment of the Superior Court of Sutter County, and from an order denying a new trial. Edwin A. Davis, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, Tuttle & Tuttle, and Solinsky & Wehe, for Appellant.

The Mining Debris Act of Congress is constitutional and valid. (*North Bloomfield* v. *United States,* 88 Fed. 664, 32 C. C. A. 84.) Every intendment is in favor of its validity. (*United States* v. *Gettysburg etc. R. R. Co.,* 160 U. S. 668, 16 Sup. Ct. 427; *Fletcher* v. *Peck,* 6 Cranch, (U. S.) 87; *Ogden* v. *Saunders,* 12 Wheat. 213; *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct. 273; *Sinking Fund Cases,* 99 U. S. 718.) It is for Congress to determine when its full power shall be brought into activity, and as to the regulations and sanctions which shall be provided. (*Gilman* v. *Philadelphia,* 3 Wall. (U. S.) 713.) The provision for approval of the works constructed in accordance with direction of the commission after a hearing, and for the approval of the same, is in effect a declaration by Congress that the works are lawful. (*Miller* v. *Mayor of New York,* 109 U. S. 385, 3 Sup. Ct. 228.) Damage from a public improvement which does not amount to a direct taking of the land is not actionable. (*Salliotte* v. *King Bridge Co.,* 122 Fed. 383; *Gibson* v. *United States,* 166 U. S. 269, 17 Sup. Ct. 578; *Bedford* v. *United States,* 192 U. S. 217, 24 Sup. Ct. 238; Civil Code, sec. 3482; *Pasadena* v. *Stimson,* 91 Cal. 238, 27 Pac. 604; *Green* v. *Swift,* 47 Cal. 536; *Green* v. *State,* 73 Cal. 29, 11 Pac. 602, 14 Pac. 610; *De Baker* v. *Southern Cal. Ry. Co.,* 106 Cal. 257, 46 Am. St. Rep. 237, 39 Pac. 610.) The constitution and laws of the United States are of paramount authority and cannot be annulled or impaired by any state constitution or statute. (1 Sprague (U. S.) 602, 30 Fed. Cas. No. 18, 273; *Escanaba etc. Co.* v. *Chicago,* 107 U. S. 683, 2 Sup. Ct. 185.) This is not a case of eminent domain, though the authorities are conflicting as to the right of eminent domain for mining purposes. (*Consolidated Channel Co.* v. *Central Pac. R. R. Co.,* 51 Cal. 269. See, *contra: Overman S. M. Co.* v. *Corcoran,*

15 Nev. 147; *Nash* v. *Clark*, 27 Utah, 158, 101 Am. St. Rep. 953, 75 Pac. 371, s. c. 198 U. S. 365, 25 Sup. Ct. 676; *Strickley* v. *Highland Boy etc. Co.*, 28 Utah, 215, 107 Am. St. Rep. 711, 78 Pac. 296, s. c. 200 U. S. 527, 26 Sup. Ct. 301; *Butte etc. R. R. Co.* v. *Montana U. R. Co.*, 16 Mont. 504, 50 Am. St. Rep. 508, 41 Pac. 232; *Hand Gold M. Co.* v. *Parker*, 59 Ga. 419; *Douglas* v. *Byrnes*, 59 Fed. 31; *New Central Coal Co.* v. *Georgia Creek Coal etc. Co.*, 37 Md. 537.)

Lawrence Schillig, District Attorney, and Devlin & Devlin, for Respondent.

The permit given under the act of Congress is not given as the result of a judicial determination, and does not preclude an injunction in the courts, if the restraining works approved by the commission are not sufficient to restrain injury to the plaintiff. (*People* v. *Gold Run etc. Co.*, 66 Cal. 155, 4 Pac. 1150; *Woodruff* v. *North Bloomfield etc. Co.*, 9 Sawy. 441, 18 Fed. 753; *Robinson* v. *Black Diamond Coal Co.*, 57 Cal. 412, 40 Am. Rep. 118; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Hill* v. *Smith*, 27 Cal. 476.) The object of the act of Congress is to make the restraining of debris as effective as possible, and the permit does not authorize the miner to commit a nuisance, nor does the act contemplate such effect, but permits hydraulic mining only so far as it can be done "without injury to the navigability of said river or the lands adjacent thereto." A county may enjoin a private nuisance caused by the acts of the defendant to its property. (*County of Yuba* v. *Kate Hayes Mining Co.*, 141 Cal. 360, 74 Pac. 1049.) Even if the act of Congress could be construed as authorizing the flow of debris upon plaintiff's property to its injury, it would authorize a taking prohibited by constitutional safeguards, which is not permissible. (*Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *King* v. *United States*, 59 Fed. 9; *United States* v. *Alexander*, 148 U. S. 186, 13 Sup. Ct. 529.) State authorities are to similar effect. (*City of Janesville* v. *Carpenter*, 77 Wis. 288, 20 Am. St. Rep. 123, 46 N. W. 128; *Tyler* v. *Tehama County*, 109 Cal. 623, 42 Pac. 240; *Hill* v. *Smith*, 27 Cal. 476; *Hendershott* v. *Ottumwa*, 46 Iowa, 658, 26 Am. Rep. 182; *City of Aurora* v. *Reed*, 57 Ill. 129, 11 Am. Rep. 1; *Miles* v. *Worcester*, 154 Mass. 511,

26 Am. St. Rep. 264, 28 N. E. 676; *Eaton* v. *Boston etc. R. R. Co.,* 51 N. H. 504, 12 Am. Rep. 147; *Conniff* v. *San Francisco,* 67 Cal. 48, 7 Pac. 41; *Trenton Water Co.* v. *Raff,* 36 N. J. L. 335; *Staton* v. *Norfolk etc. R. Co.,* 111 N. C. 284, 16 S. E. 183; *Chattanooga* v. *Dowling,* 101 Tenn. 345, 47 S. W. 700; *Brodwell* v. *City of Kansas,* 75 Mo. 213, 42 Am. Rep. 409; *Kemper* v. *Louisville,* 14 Bush, (Ky.) 92; *Baltimore etc. Ry. Co.* v. *Reaney,* 42 Md. 133; *Baltimore* v. *Merryman,* 86 Md. 592, 39 Atl. 98; *Grand Rapids Booming Co.* v. *Jarvis,* 30 Mich. 321.) If the injurious acts of the defendant are reviewable at all in the courts, the judgment must be affirmed. If defendant, by reason of the permit pleaded, can injure or destroy the property of the plaintiff, he can injure or destroy the whole Sacramento Valley, the whole defense being that the permit is an absolute bar to any kind of an action which is untenable.

SHAW, J.—The record herein presents appeals by the defendant from the judgment, from an order denying his motion for a new trial and from an order denying his motion, under sections 663 and 663½ of the Code of Civil Procedure, to vacate the judgment given, and render judgment in his favor. Each of the three appeals presents the same question.

The complaint states a cause of action by the county of Sutter, as owner of the lands in Yuba City, upon which the county courthouse and hall of records stand, also of a bridge across Feather River between Yuba City and Marysville and a half interest in two other bridges over Bear River, to enjoin the defendant from dumping or discharging into said rivers the tailings and debris of his mines, to the injury of said property. It was alleged in substance that by the discharge thereof into said rivers the said debris and refuse from defendant's mines had filled up the beds of the rivers and caused the waters thereof to overflow to and upon the said lands and the approaches to said bridges, and to carry said debris and refuse to and deposit them upon said lands, whereby said lands are greatly injured and said bridges are threatened with destruction, and that, if continued, great damage to plaintiff's said property will ensue and said bridges will be destroyed. The court found the facts in accordance with these allegations of the complaint and gave judgment

accordingly. Unless the facts stated in the special defense pleaded in the answer, and found to be true by the court, legalizes the nuisance complained of and authorizes the defendant to continue the same, regardless of the injury it may cause to private property, the judgment is admitted to be correct and fully sustained by the evidence and by the decisions in *County of Yuba* v. *Kate Hayes M. Co.,* 141 Cal. 360, [74 Pac. 1049], and *Woodruff* v. *North Bloomfield G. M. Co.,* 9 Sawy. 441, 18 Fed. '753.

The special defense was that the defendant was engaged in mining upon a claim, known as the "Polar Star Mine," had erected below the same a dam for impounding the debris coming from such mine, had obtained from the California Debris Commission, under the authority of the act of Congress, approved March 1, 1893 (27 Stats. at Large, p. 507, [U. S. Comp. Stats. 1901, p. 3553]), a permit to operate his mines upon said claim by hydraulic process, that all the mining done by him and all the debris discharged therefrom was done solely in strict compliance with and obedience to said permit, and that he did not intend or threaten to operate said mines or discharge such debris, except in compliance therewith and under the authority thereof. The court found these allegations to be true, but also found that the dam so constructed was insufficient to prevent, and did not prevent, said debris from being carried down to and upon plaintiff's property, to its injury, that it is not a permanent structure, but is liable to be carried away by the forces of nature, and that said permit was no bar to the action. The latter is really a conclusion, and its accuracy presents the sole question in the case.

The act of Congress provides for the appointment of three army engineers to be known as the California Debris Commission. Its jurisdiction, so far as it affects hydraulic mining, extends to the territory drained by the Sacramento and San Joaquin rivers. Hydraulic mining directly or indirectly injuring the navigability of said river systems, except as permitted under the provisions of the act, is prohibited. The commission is directed to adopt plans to prevent damage from debris resulting from mining operations, with a view of restoring the navigability of said rivers to the condition existing in 1860, and of permitting hydraulic mining, so far as it

can be done "without injury to the navigability of said rivers or the lands adjacent thereto." Any person or persons who desire to operate a mine, or mines, by hydraulic process must file with the commission a verified petition and a release or surrender to the United States of the right or privilege to regulate the manner in which the debris from such mines shall be restrained, and the amount of debris that may be produced from such mines. Thereupon a notice, specifying the contents of the petition and fixing a time previous to which all proofs are to be submitted, is to be published in a daily paper, or in three issues of a weekly paper. On or before the time fixed "all parties interested, either as petitioners or contestants, whether miners or agriculturists, may file affidavits, plans and maps, in support of their respective claims. Further hearings, upon notice to all parties of record, may be granted by the commission when necessary."

If "within thirty days after the time so fixed" a majority of the commission decide in favor of the petitioner, the commission must thereupon make an order specifying in detail the method and manner of operating such mine, the restraining works to be built, the location and material thereof, and such further safeguards "as will protect public interests and prevent injury to the navigable rivers, and the lands adjacent thereto," all to be done at the expense of the miner.

The mine owner must then construct the prescribed works, under the supervision of the commission, and upon the completion thereof "permission shall thereupon be granted to the owner or owners of such mine or mines to commence mining operations subject to the conditions of said order and the provisions of this act." The order may be modified from time to time and the permission may be suspended, as conditions may demand. The act contains many other provisions relating to the administrative duties and powers of the board, which are not important to the question.

It is the contention of the appellant that the act empowers the commission to act as a judicial tribunal by which, in the prescribed proceeding, all persons liable to injury may have their rights ascertained and their property protected from the effects of debris by the adoption and enforcement of a plan appropriate and sufficient for that purpose, and that the decision and orders of this tribunal are binding and con-

clusive upon all parties affected by the mining operations authorized by the permit granted, even if it should turn out that the plan adopted was wholly inadequate and ineffective to prevent injury. There are instances wherein, for the purpose of apportioning to the persons specially interested and benefited, the cost of a local public improvement, or for the purpose of fixing the amounts to be paid for private property taken for or damaged by such public improvements, special tribunals have been established, with power to make a conclusive determination, in a special proceeding, upon constructive notice to all parties interested. The proceedings before city councils for the improvement or opening of public streets are familiar examples. But it is essential in all such cases that the thing to be accomplished shall be a matter of public concern and for the public benefit. The legislative power does not extend to the raising of local taxes to pay for improvements for private benefit or profit, nor to the taking or damaging of the private property of one person for the private use and benefit of others. The business of mining for the benefit of the mine-owner is as much a private affair as that of the farm or factory, and the right of eminent domain cannot be invoked in aid of it. (*Consolidated C. Co.* v. *Central Pac. R. R. Co.*, 51 Cal. 271; *Lorenz* v. *Jacobs*, 63 Cal. 73; *Dower* v. *Richards*, 73 Cal. 480, [15 Pac. 105]; *Amador etc. Co.* v. *De Witt*, 73 Cal. 485, [15 Pac. 74].) The mine of the defendant was carried on solely for his own personal profit. Laws could be enacted, in the exercise of the police power, requiring him to use all reasonable precautions and means to prevent injury to others, or the obstruction of navigable streams, from the discharge of mining debris into the streams, and to ascertain and devise the means and plans best adapted to that end. But the law is powerless to declare that the observance of such means or precautions shall exonerate him from liability, if, notwithstanding their use, injury is caused to other persons by such discharge of debris.

This proposition appears to be conceded in the argument in this court. Appellant here contends that the main objects and purposes of the act are to encourage the production of gold with a view to the maintenance of the gold standard, and to preserve and improve the navigability of the rivers, both of which subjects, it is argued, are within the scope of the legis-

lative powers of the United States; that by this law the hydraulic miners are made the public agents of the United States to carry out the plans adopted by the commission for the accomplishment of the said purposes and objects; that these are public purposes designed to promote the general welfare; that the powers of Congress, in providing for public improvements within its sphere of action, are limited only by the provisions of the constitution of the United States, which, unlike that of this state, does not provide that private property cannot be taken or *damaged* for public use, without compensation, but only that it cannot be *taken* for public use without compensation; that the injury to the plaintiff from the debris in question does not constitute a taking of its property, but only a damage thereto; and, hence, that the depositing of such debris by mining, in pursuance of the permit, is a lawful act, and the resulting injury *damnum absque injuria.*

The production of sufficient gold to maintain the gold standard may be a matter of public importance, and it may be within the power of Congress to encourage it by appropriate legislation. It probably has the same power with regard to any other industry tending to increase the wealth of the nation. It cannot be admitted, however, that the mining of gold to be applied wholly to the private use of the miner, to whatever extent it may increase the general output, is a public purpose, in behalf of which the power of eminent domain may be resorted to, or for which the private property of others may be taken, or its injury lawfully authorized.

The preservation and improvement of the navigability of navigable rivers is no doubt a proper subject of congressional legislation. The act in question is intended to promote those objects by providing for the regulation, restriction, and supervision of hydraulic mining upon the headwaters of those rivers. It does not purport to make the miners the agents of the United States to preserve the rivers below in their present state, or restore them to a former condition. Its provisions are calculated to so control and restrict the operations of the mines as to prevent the further clogging of the navigable streams by mining debris which, otherwise, would occur, and to devise plans and means whereby hydraulic mining, so controlled and restricted, may be carried on without injury

to other persons. They were never intended to give such miners full license, in case the plans proved ineffectual to prevent it, either to fill up the river channels or to commit injuries to private property, by discharging debris into the streams. The commission is given power to revoke the permit, or to modify the plans. This is perhaps sufficient to protect and preserve the navigable streams. At all events, that is a public matter, and the public authorities alone are authorized to act. But no power is given to the commission to redress private injuries, if any should occur. It is unnecessary to decide whether the injury here committed and threatened constitutes a taking of private property for public use, or not. We are of the opinion that, while it was the purpose of the act in question to prevent such injuries, if possible, it was not intended to exonerate the miner from liability therefor, or, in any respect to limit or restrict the powers of the state courts to protect private property from threatened injury and to redress inflicted injury thereto, from the operation of hydraulic mines, though carried on under a permit and in strict compliance with the plans and directions of the commission, and that the act does not have that effect. The provisions of the act directing notice to be given, and authorizing a hearing at which all parties interested may appear, were not intended to conclude and estop the owners of lands below with respect to subsequent injuries that might be inflicted, but were designed to enable the commission to obtain all aid which it could derive from the suggestions of all interested persons, including those who might believe their property to be in danger, in order that it would be better advised as to the means and plans necessary to prevent injury.

The judgment and orders appealed from are affirmed.

Angellotti, J., Henshaw, J., Lorigan, J., and Sloss, J., concurred.