Argued March 4, reversed March 17, rehearing denied July 7, 1914.

# ANDERSON v. SMITH-POWERS LOGGING CO.*

(139 Pac. 736.)

**Carriers—"Common Carrier."**

1. A common carrier is one who, by virtue of his calling, and as a regular business, undertakes to transport persons or commodities from place to place for all who choose to employ him and pay his charges, and a logging railroad which carries logs only for its owners is not a common carrier.

[As to when a person or corporation is a carrier of goods as distinguished from warehouseman or forwarder, see note in Ann. Cas. 1914B, 778.]

**Eminent Domain—Extent of Power—Constitutional Provisions.**

2. Section 6307, L. O. L., in so far as it authorizes the establishment of a county road from the timber land or timber of the owner to some public road, steamboat landing, or railway station, is unconstitutional as authorizing a taking for private use, though the road may be of benefit to the public; and road proceedings and a franchise for a logging railroad based thereon are void.

[As to what is taking property for a public use as contemplated in eminent domain laws, see note in 16 Am. St. Rep. 610.]

**Eminent Domain—Extent of Power—Constitutional Provisions.**

3. Article I, Section 18, of the Constitution, providing that private property shall not be taken for public use without just compensation, impliedly prohibits the taking of private property for private use.

From Coos: LAWRENCE T. HARRIS, Judge.

This is an action of ejectment by Andreas Anderson and Alfred Brunell against the Smith-Powers Logging Company, a corporation; Coos County of the State of Oregon, a municipal corporation; John F. Hall, County Judge; E. A. Anderson and W. T. Dement, County Commissioners, sitting as the County Court of Coos County, Oregon. From a judgment in favor of defendants, plaintiffs appeal. The facts are fully set forth in the opinion of the court.

REVERSED. NEW TRIAL GRANTED.

*On the question of the power to exercise eminent domain to secure right of way for logging railroad, see note in 1 L. R. A. (N. S.) 969.

For appellants there was a brief and an oral argument by *Mr. Lawrence A. Liljeqvist.*

For respondent, Smith-Powers Logging Co., there was a brief and an oral argument by *Mr. John D. Goss.*

For respondent, Coos County, there was a brief and an oral argument by *Mr. George M. Brown,* Prosecuting Attorney.

Department 1.   MR. JUSTICE RAMSEY delivered the opinion of the court.

The defendant the Smith-Powers Logging Company is a Minnesota corporation engaged in the logging business in Coos County. The defendants John H. Hall, E. A. Anderson, and W. T. Dement are, respectively, the county judge and the commissioners of the County Court of Coos County. Coos County is also made a party defendant.

The complaint alleges, in substance, that the plaintiffs are tenants in common, the owners in fee simple, and entitled to the possession of the following described parcels of real property, situated in Coos County, State of Oregon, to wit:

Lot 4 together with all tide lands fronting and abutting thereon in section 26, lot 1, together with all the tide lands fronting and abutting thereon in section 36 and that portion of lot —— in section 35 and the tide lands fronting and abutting the same, which is more particularly described as follows, to wit: Beginning on the section line between sections 35 and 36 at the northeast corner of said lot 6; thence south along said section line 366 feet; thence west 355 feet; thence northerly along low-water line of South Slough to a point 612 feet west of the place of beginning; thence east to the place of beginning—all being in township 26 south, range 14 west of the Willamette meridian in the State of Oregon.

The complaint alleges, also, on or about the —— day of March, 1908, the Smith-Powers Logging Company, Coos County, and the County Court of Coos County, State of Oregon, through its duly elected qualified members, against the will and without the consent of the plaintiffs or either of them, wrongfully and unlawfully entered into the possession of a 40-foot strip of land, crossing the above-described premises, and described as follows:

The point of commencement of said 40-foot strip is to be found as follows, viz.: Beginning at the corner of sections 25, 26, 35, and 36 in township 26 south, range 14 west of the Willamette meridian in Coos County, Oregon, running thence west 78 feet; thence south 8 degrees west 820 feet; thence south 17 degrees east 100 feet; being the point of commencement of said strip in said lot 6, in section 35, township 26 south, range 14 west of the Willamette meridian, Coos County, Oregon, from which point a spruce tree, 20 inches in diameter bears north 20 degrees west 17 feet, and a fir tree 50 inches in diameter, bears south 87 degrees east 14 feet; thence running from said point of commencement north 11¾ degrees west 100 feet, north 10 degrees west 100 feet, north 15 degrees east 100 feet, north 10 degrees east 100 feet, north 8 degrees east 531 feet to a point 78 feet west of the common corner of sections 25, 26, 35, and 36, running thence north 2 degrees west 80 feet, north 22 degrees west 100 feet, north 32 degrees west 270 feet, north 22 degrees west 100 feet to the point of termination, from which point a cedar tree six inches in diameter bears north 43 degrees east 27 feet, and a willow tree 6 inches in diameter bears south 50 degrees east 35 feet, and which point of termination of said strip is also established as follows, to wit: Beginning at a point 78 feet west of the common corner to sections 25, 26, 35, and 36 in township 26 south, range 14 west of the Willamette meridian in said Coos County, Oregon, and running thence north 2 degrees west 80 feet;

thence north 22 degrees west 100 feet; thence north 32 degrees west 270 feet; thence north 22 degrees west 100 feet to the point of termination aforesaid. The said above-described strip of land where the same crosses the lands and premises of these plaintiffs hereinbefore described being the identical strip of land now held and in the unlawful possession of the defendants Coos County and the County Court of said county, as a pretended county road or road of public easement, and in the unlawful possession of the defendant Smith-Powers Logging Company under a pretended franchise for a logging railroad from said Coos County and the said County Court of said county.

That ever since said defendants so wrongfully and unlawfully entered upon and took possession of said real property, as above set forth, the said defendant Smith-Powers Logging Company has, without the consent of the plaintiffs, or either of them, and against their will, wrongfully and unlawfully constructed and operated a trestle and logging railroad on and over said premises first hereinabove described, where said 40-foot strip above described passes over and crosses the same, and said company has otherwise been engaged in conducting its logging business thereon, and has thereby wrongfully and unlawfully, and without the consent of these plaintiffs, used and occupied, and now so uses and occupies, said strip of land above described for the purpose of hauling, transporting, and carrying logs belonging to said company on and over said premises, and in the conducting generally of its logging operations. That the fair and reasonable value of such use and occupation of said real property is the sum of $1,000, and that plaintiffs have been damaged thereby in said sum. That during the occupancy of said strip of land by the defendant as aforesaid, the defendant Smith-Powers Logging Company

wrongfully, improperly, and unlawfully, and, with the authority and approval of the rest of the above-named defendants, destroyed and removed certain dikes and ditches, which these plaintiffs had constructed upon said real property above described, and which said dikes and ditches were there maintained by these plaintiffs for the purpose of keeping out the salt water of South Slough and preventing said lands from being overflowed. That by reason of the destruction of said dykes and ditches these plaintiffs have been damaged in the sum of $500. That by reason of the injury to and the destruction of said dikes, the said defendant, with the authority and approval of said other defendants, wrongfully, unlawfully, and improperly allowed the salt water of said South Slough to overflow and inundate said premises, and to impregnate the soil thereof with salt, to the plaintiffs' damage in the further sum of $200.

The Smith-Powers Logging Company filed an answer admitting some parts of the complaint, and denying other portions thereof, and then set up affirmative matter. The principal matter set up is the location through the lands of the plaintiffs, described in the complaint, by the County Court of Coos County, on the 7th day of March, 1908, of a public road, 40 feet wide, under Section 6307, L. O. L., from a certain point on the timber land of the Coos Bay Lumber & Coal Company, the petitioner for said road, to the steamboat landing on the bank of the South Slough, said road being properly described in said answer. The answer set up, also, the granting to the Smith-Powers Logging Company of a franchise to construct and maintain, for the period of 10 years, along the west side of said road, between the termini thereof, *a logging railroad*. Most of the affirmative matter of the

answer was denied by the reply.    By agreement of the
parties the case was tried without a jury.    The court
rendered a judgment in favor of the defendants.    The
plaintiffs appeal, and contend that the proceedings of
the County Court, in establishing said public road and
in granting said franchise, authorizing the defendant
company to construct and maintain a logging railroad
through the plaintiffs' lands, are null and void, and
that the act of the legislature upon which said pro-
ceedings were founded is unconstitutional.

The Coos Bay Lumber & Coal Company was the
sole petitioner for the location of said road, and it al-
leged, *inter alia,* that it owned certain timber lands in
Coos County, described in its petition; that said tim-
ber lands were not reached by any convenient public
road previously provided by law, and that it was
necessary that the public and said company should
have ingress to and egress from said timber land and
the timber land of said company; that said petitioner
was then engaged in logging in the immediate vicinity
of said land; and that it was desirous of logging said
land.    Said petition alleged, also:

"That unless a county road is located and estab-
lished connecting said timber land and the timber of
the Coos Bay Lumber & Coal Company with some
other public road, steamboat landing, waterway, or
railway station, the said timber is in danger of being
lost, and the said Coos Bay Lumber & Coal Company
and the public are in danger of being deprived of the
benefits to be derived from the logging of said land
and the marketing of said timber thereon."

The foregoing extract from said petition shows *for
what purpose* the petition asked for a location of said
road.    Said road was to be located to enable the peti-
tioner to cut the timber on said land and transport it
to the steamboat landing on the slough referred to,

and thereby prevent the petitioner and the public from being deprived of the benefit of logging said land and marketing the timber thereon.

Said petitioner incorporated into the said petition for the locating of said road a clause in the following words:

"And your petitioner further prays that *immediately* upon making and entering of the order declaring such road to be a public road or a perpetual right of way, the honorable court do grant to it, the said Coos Bay Lumber & Coal Company, a franchise to construct and maintain, in and upon said road hereinbefore petitioned for, a logging railroad, suitable for hauling or transporting *logs, lumber, or timber* thereon, upon such terms and in such a manner and for such time, not exceeding ten years, as the court may determine."

The County Court in the order establishing said road, denied the prayer for the granting of a franchise for said logging railroad, for the reason that the court was of the opinion that there should be a separate petition for said franchise. On the same day, however, that the order establishing said road was made, the Smith-Powers Logging Company, the defendant, petitioned said court to grant it a franchise to construct and maintain a logging railroad along said public road, and the prayer of this petitioner was granted on the day that the order was made establishing said road. The order of the court granting said franchise to the defendant states that said franchise is granted to the defendant "to construct and maintain in and upon said county road in Coos County, *a logging railroad suitable for hauling logs thereon.*"

The Coos Bay Lumber & Coal Company was the petitioner for the establishment of said road, and in the first instance for the franchise to construct and maintain said logging railroad; but, as is shown by

the sixth finding of fact, after the filing of said petition, and before the making of the order establishing said road, the Smith-Powers Logging Company became the owner of the timber on the timber land referred to in the said petition, and hence the franchise was granted to the latter company.

The ninth finding of fact is as follows:

"Since the opening of said road of public easement practically *all* the benefit therefrom has inured to the defendant Smith-Powers Logging Company, and persons connected with the logging operation of said company."

There is no finding that the logging road was a common carrier, and the findings of the court indicate that it was not.

1. There is nothing in the findings of fact showing that the defendant intended to carry either passengers or freight for hire, or that it did carry for hire. To bring a person within the description of common carrier, he must exercise the business as a public employment; he must undertake to carry goods for persons generally, and hold himself out as ready to transport goods for hire as a business, not as a casual occupation. A common carrier may therefore be defined as one who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities from place to place, offering his services to all such as choose to employ him and pay his charges. It is not necessary that he carry *both* passengers and freight, or that he carry all kinds of freight: See, on this point, *Oswego D. & R. Ry. Co.* v. *Cobb,* 66 Or. 587 (135 Pac. 181). The facts admitted by the pleadings and what is found by the court below do not show that defendant's logging road was intended to be, or that it is, a common carrier.

2. The chief question for determination on this appeal is whether Sections 6307 and 6523, L. O. L., upon which the proceedings of the County Court establishing the road in question and granting the franchise were founded, are constitutional. They are assailed by the plaintiffs as being unconstitutional for the reason that they authorize the taking of private property. for private use.

The plaintiffs appeared in the County Court, when said proceedings were pending there, and opposed them for the same reasons that they urged against them here, and, in the court below, they demurred to the new matter set up in the answer, urging the unconstitutionality of said sections. They have opposed the taking of their lands at all times, and refused to accept the damages that were assessed to them by the County Court.

The sections of Lord's Oregon Laws referred to *supra* upon which said proceedings were based, are Section 20 of Laws of 1903, page 262, as amended by Chapter 136, Laws of 1907.

3. Article I, Section 18, of the Constitution of this state, is as follows:

"Private property shall not be taken for public use, nor the particular services of any man demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered."

It is the settled rule in this state that the foregoing provision of the Constitution impliedly prohibits the taking of private property for private use: *Grande Ronde Electric Co.* v. *Drake,* 46 Or. 247 (78 Pac. 1031). The location of said road over the plaintiffs' land and the construction of a logging railroad along said road constituted a taking of the plaintiffs' property. If the

*use* for which said property was so taken was a private one, such taking was unconstitutional. The location of said road and the granting of the franchise to construct a logging railroad along said road of public easement should be considered as one act, as they were granted on the same day, and both were allowed to enable the defendant to construct and maintain its logging railroad across the plaintiffs' land. The interested party asked for both in one petition. The road of public easement was located first, and then, *on the same day*, the franchise was granted.

The petition for the road of public easement alleges that:

"It is necessary that the public and the Coos Bay Lumber & Coal Company have ingress to and egress from the said timber land and the timber of the said Coos Bay Lumber & Coal Company. Your petitioner is now engaged in logging in the immediate vicinity of said land, and is desirous of logging the same; that unless a county road is located and established connecting the said timber land and timber of the Coos Bay Lumber & Coal Company with some other public road, steamboat landing, waterway, or railway station, the said timber is in danger of being lost, and the Coos Bay Lumber & Coal Company and the public are in danger of being deprived of the benefits to be derived from the logging of the said land and marketing of said timber."

The foregoing extract from the petition for said road shows the *reasons* for establishing it as stated in said petition. To state it in a few words, the reason for establishing said road and for granting said franchise for the construction and maintaining of a logging railroad from said timber to the steamboat landing was to enable the defendant company to transport said timber from where it was to said steamboat

landing, and thereby enable it to dispose of the timber more profitably than it otherwise could do. The public had no greater interest in the marketing of said timber than it has in the marketing of grain, fruit, wood, or any other commodity.

The trial court made the following finding in relation to the use of said road:

"Since the opening of said road of public easement, practically all of the benefit therefrom has inured to the defendant Smith-Powers Logging Company and persons connected with the logging operation of said company."

This finding was made about four years after the said road had been established, and up to that time said road was a benefit only to the defendant and persons connected with its logging operations.

In *Apex Trans. Co.* v. *Garbade*, 32 Or. 584 (52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513), discussing a similar question, the court says:

"The right to the relief demanded was controverted on the ground, among others, that the use for which the land sought to be condemned was required by the corporation was *not a public, but a private use.* * * The statute under which the action was brought (Laws 1895, p. 6), so far as material to this question, provides that 'any corporation organized for the purpose * * of transporting timber, lumber, or cordwood * * shall have the right to construct and operate railroads, skidroads, tramways, chutes and flumes between such points as may be indicated in their articles of incorporation, and shall have a right * * to appropriate so much of said land as may be necessary * * and may maintain an action for the appropriation thereof in the manner and form as by law provided by any railway, * * and with like effect,' and that 'all such * * skidroads, tramways, chutes and flumes shall be deemed to be *for the public benefit,* * * and shall afford to all persons equal facilities in the use thereof

for the purposes to which they are adapted, upon payment or tender of reasonable compensation for such use.' The articles of incorporation of the plaintiff declare that it is organized for the purpose of transporting logs, timber, lumber, cordwood, etc., by means of a skidroad from a certain log pond, * * a distance of about four or five miles. * * We feel constrained to say that, in our judgment, they do not show such a use as would authorize the taking of private property without the consent of the owner. It appears quite clearly that the plaintiff company was organized, and the proposed road is to be constructed and operated *as an instrumentality, to facilitate the business of the Bridal Veil Lumbering Company,* a private corporation, engaged in operating a sawmill, and *not for a public use or for the accommodation or benefit of the public.*''

The fact that it was to be used as an agency in getting logs and timber to market was not considered sufficient to constitute a public use.

15 Cyc., page 581, says:

''If the special benefit to be derived from the lands sought to be appropriated is wholly for private persons, the use is a private one, and is not made a public use by the fact that the public has a theoretical right to use it, or that the public will receive an incidental or prospective benefit therefrom.''

In Volume 6 of Words and Phrases, page 5827, said work defines a public use thus:

''To constitute a public use: First, The general public must have a definite and fixed use of the property to be condemned, a use independent of the will of the private corporation in whom the title of the property when condemned will be vested, a public use which cannot be defeated by such private owner, but which public use continues to be guarded and controlled by the general public through laws passed by the legislature. Second. This public use must be clearly a

needful one for the public, one which cannot be given up without obvious general loss and inconvenience.''

In *Alfred Phosphate Co.* v. *Duck River P. Co.*, 120 Tenn. 274 (113 S. W. 413, 22 L. R. A. (N. S.) 701), the court says:

"The right of way sought to be condemned in the present case is necessarily for the exclusive use of the Alfred Phosphate Company. This company is not a common carrier, and is in no sense a public service corporation. The line of the railroad would extend from the mines of petitioner to the junction of the Nashville, Chattanooga & St. Louis Railway, and the only tonnage that would pass over this road would be the private traffic of the petitioner. It is argued, however, that such railroad would provide an outlet for the products of other phosphate companies situated in that vicinity. But the fact that such a railroad might benefit a limited class would not clothe it about with the character of a public use.''

Discussing what is a public use, Judge COOLEY, in his work on Constitutional Limitations (6 ed.), page 653, says:

"Nor could it be of importance that the public would receive incidental benefits, such as usually spring from the improvement of lands or the establishment of prosperous private enterprises. The public implies a possession, an occupation, and enjoyment of the land by the public at large, or by public agencies; and a due protection to the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to another on vague grounds of public benefit to spring from the more profitable use to which the latter may devote it.''

On page 655 of the same volume, Judge COOLEY says, also:

"That only can be considered * * [a public use] when the government is supplying its own needs, or is

furnishing facilities in regard to those matters of public necessity, convenience, or welfare which on account of their peculiar character and the difficulty—perhaps impossibility—of making provision for them otherwise, is alike proper, useful, and needful for the government to provide."

In *Scholl* v. *German Coal Co.*, 118 Ill. 433 (10 N. E. 201, 59 Am. Rep. 379), the court says:

"Viewing the question before us in the light of the general principles here stated, it is clear that the use for which the land is proposed to be taken in this case is not a public one. The coal works and the present tramway are in the strictest sense private property, and the public generally have no more interest in them, or in the operation of the works, including the tramway, than they have in any other strictly private business. The same would be equally true after the proposed extension of the tramway. The extending of it to the railroad would not change its character or the obligations of the company to the public in the slightest degree. Without the consent of the owners of it, there is not a person in the state, outside of themselves, who would have the right to ride upon it * * or to have carried upon it a single pound of freight."

In *Sutter County* v. *Nicols*, 152 Cal. 695 (93 Pac. 875, 14 Ann. Cas. 900, 15 L. R. A. (N. S.) 616), the court says:

"It cannot be admitted, however, that the mining of gold to be applied wholly to the private use of the miner, to whatever extent it may increase the general output, is a public purpose in behalf of which the power of eminent domain may be resorted to, or for which the private property of others may be taken, or its injury lawfully authorized."

In *Board of Health* v. *Van Hoesen*, 87 Mich. 541 (49 N. W. 896, 897, 14 L. R. A. 114), the court says:

"It is argued that the property is to be used as a place of burial, and that the burial of the dead is a public benefit, and therefore the use is public. But the answer to this argument is that the right of burial in these grounds is not vested in the public, or in the public authorities, or subject to their control, but only in the individual lot owners. If the fact that it is a benefit to the public that the dead should be buried is sufficient to make a cemetery a public use, the legislature might authorize A. to take the land of B. for a private burial place of A. and his family. The fact that this land is taken for a number of individuals, for division among themselves or their grantees, for their own use as a cemetery, makes the case no stronger than if taken for the benefit of a single individual."

In the *Minnesota C. & P. Co.* v. *Koochiching Co.,* 97 Minn. 436 (107 N. W. 408, 7 Ann. Cas. 1182, 5 L. R. A. (N. S.) 638), the court says:

"Whether a certain use is public or private is a judicial and not a legislative question. * * The legislature cannot, by its mere fiat, make a private use a public one. It follows that a statute which attempts to authorize the condemnation of private property for other than a public use is void without reference to any legislative declaration as to the nature of the use."

In *Weidenfeld* v. *Sugar R. R. Co.* (C. C.), 48 Fed. 618, the court says:

"Although its [railroad's] promoters profess that it is organized for a public purpose, yet they have failed to show any public use or necessity for the railroad or any public traffic that it will obtain when constructed. Messrs. Healey and Brown admit that their purpose in subscribing to the stock was to secure a means of reaching the bark they needed for the tanneries; and as the stock is held by themselves, their

attorneys and business associates, it is probable that their motive in subscribing to the stock actuated all the subscribers for one share each. The company is organized for the short term of 10 years, and is manifestly intended to meet a temporary necessity. It follows, therefore, that its stockholders are endeavoring to use its corporate powers, including that of eminent domain, for a private purpose. Whether the use is a public one, for which private property may be taken, is a judicial question. If the use itself is found to be only private, or, further, if, the use being public, the appropriation can in no respect be subservient thereto, it is the duty of the judicial department to protect the citizens by proper remedies from the taking of his property, whether attempted in open disregard of or under color of law.''

In Nichols, Eminent Domain, page 274, the author says:

''The power of eminent domain cannot be constitutionally employed to enable individuals to cultivate their land or carry on their business to better advantage, even if the prosperity of the community will be enhanced by their success.''

In Mills, Eminent Domain, Section 10, the author says:

''The legislature cannot so determine that the use is public as to make the determination conclusive upon the courts. The attempt of the legislature to determine the public character of the use does not settle that it has the right to do so, *but the existence of the public use in any class of cases is a question to be determined by the courts.*''

In 10 Am. & Eng. Ency. Law, 1 (2 ed.), page 1069, the author says:

''The question whether a particular use is public or not is ultimately for the courts. This is necessarily

true in view of the constitutional provisions of the different states that private property can be taken only for public use, since the interpretation of constitutional provisions is within the province of the judiciary.''

In the same volume, on page 1063, the author says:

"It is not essential that the use or benefit extend to the whole public or to any considerable portion thereof. It may be limited to the inhabitants of a small locality, but the use or benefit must be common. It must be for all alike and upon the same terms, if it be an undertaking for the performance of service, however few the number who expect to avail themselves of its benefit.''

In his work of Eminent Domain (2 ed.), Section 165, Lewis says:

"The public use of anything is the employment or application of the thing by the public. Public use means the same as use by the public, and this, it seems to us, is the construction the words should receive in the constitutional provision in question. The reasons which incline us to this view are: First, that it accords with the primary, and more commonly understood meaning of the words; second, it accords with the general practice in regard to taking private property for public use in vogue when the phrase was first brought into use in the earlier Constitutions; third, it is the only view which gives the words any force as a limitation, or renders them capable of any definite and practicable application. If the Constitution means that private property can be taken only for use by the public, it affords a definite guide to both the legislature and the courts. Though the property is vested in private individuals or corporations, the public retains certain definite rights to its use or enjoyment, and to that extent it remains under the control of the legislature. If no such rights are secured to the public, then the property is not taken for public use, and the act of appropriation is void. * * If exceptional

circumstances required exceptional legislation in these respects in any state, it is very easy to provide for it specially in the Constitution, as has been done in several states.''

In the *Matter of Split-Rock C. R. Co.,* 128 N. Y. 415 (28 N. E. 507), the court says:

''From the testimony it appears that the lands are required in order to increase the terminal facilities of the tramway company by building other tramways on the surface to facilitate the carrying of stone to the cable station, by erecting buildings for the storage of freight and for repair of shops, and to furnish means of access. * * The evidence does not suggest any business that the petitioner is to carry on in the future any more than in the past, beyond the carrying of stone for the Solway Company, except, possibly, the carrying of coal. In regard to that, it is best to describe the project in the language of the president himself, who said: 'We intend to make a contract with some private individual to furnish him with coal, so that he can transport it or sell it to people in that vicinity; to establish a coal-yard the same as anywhere, not that the Solway Process Company or the Cable Company will establish a coal-yard; some individual will have to run it, with whom we will make a contract to carry coal, and we propose to limit the contract to one individual for the present.' Looking at the statute under which the petitioner was incorporated, the object of its incorporation as described in the certificate and the evidence in regard to the manner in which it has been and is to be operated and the purpose of its corporate existence, we think it is entirely clear that the use to which the petitioner is to devote the lands of the respondents is not public but private.''

See, also, *Healey Lumber Co.* v. *Morris,* 33 Wash. 490 (74 Pac. 681, 99 Am. St. Rep. 964, 63 L. R. A. 820); *Scott Lumber Co.* v. *Wolford,* 62 W. Va. 555 (59 S. E. 516), *Garbutt Lumber Co.* v. *Georgia A. Co.,* 111 Ga.

714 (36 S. E. 942); *Shake* v. *Frazier,* 94 Ky. 143 (21 S. W. 583).

As to what constitutes a public use the adjudications are in conflict, but it appears to be generally agreed that the legislature cannot make a private use a public one by declaring it to be a public use, and that it is the province of the judiciary to determine whether a use is public or private.

It seems to be established, also, by the weight of authority that there is a distinction between a public use and a benefit to the public, and that private enterprises that give employment to many and produce various kinds of commodities for the use of the people are not necessarily public uses.

Section 6307, L. O. L., under which the road in controversy was declared a public road is as follows:

"Whenever it shall appear to the county court * * by a sworn petition of any person, that the * * timber land or timber of such person is not reached by any convenient public road heretofore provided for by law, and that it is necessary that the public and such person shall have ingress to and egress from * * the timber land, or timber of such person, the county court shall thereupon appoint the board of county road viewers, and cause an order to be issued directing them to meet at a time therein specified * * and view out and locate a county road not to exceed sixty feet wide * * from the * * timber land or timber of such person to some other public road, steamboat landing or railway station, according to the application, and to assess damages," etc.

This statute does not vest in the County Court authority to determine whether it is necessary that the public and the petitioner have ingress to or egress from the timber land of the defendant, and it seems to be the meaning of this act that the sworn petition of

the petitioner as to that fact is binding on the County Court: See *Fanning* v. *Gilliland,* 37 Or. 375 (82 Am. St. Rep. 758, 61 Pac. 636, 62 Pac. 209). The writer of this opinion, however, doubts the power of the legislature to make the petition of the person desiring the road conclusive on the County Court on that point; but it is not necessary to decide that question in this case. It is the province of the judiciary to determine whether the use for which the plaintiffs' property was taken was public or private.

The statute cited *supra,* purports to confer upon the County Courts power to establish a public road from a county road or steamboat landing to the timber land owned by the petitioner therefor, and to take the lands of other persons over which the proposed road runs without their consent, on the petitioner's paying the damages assessed therefor. This statute provides no opportunity for the land owners, through whose lands the road is to run, to appear in the County Court and show that such proposed road is not needed by the public, and thereby prevent its establishment and the taking of their land. By this statute, the County Court, so far as that point is concerned, is bound by the statements in the petition for the road.

The petitioner for the proposed road alleges, in its petition therefor, that its "timber land and timber thereon is not reached by any convenient public road heretofore provided by law, and it is necessary that the public and the Coos Bay Lumber & Coal Company shall have ingress to and egress from the said timber land and the timber of said Coos Bay Lumber & Coal Company."

"That your petitioner is now engaged in logging in the immediate vicinity of said land, *and is desirous of logging the same.* That unless a county road is lo-

cated and established connecting said timber land and timber of the Coos Bay Lumber & Coal Company with some other public road, steamboat landing, waterway, or railway station, the said timber is in danger of being lost, and the said Coos Bay Lumber & Coal Company and the public are in danger of being deprived of the benefit to be derived from the logging of said land and the marketing of the timber thereon."

The foregoing is all that was alleged in said petition to show *for what purpose said road was desired, and the use to which it was to be put.* It describes the route of the road petitioned for; but, as appears from the extract from said petition cited *supra,* the petitioner asked for the establishment of said road *in order that it might log the timber on the said land, and be able to market that timber.* That was the only purpose for locating said road as alleged in said petition. No one was interested in that matter but the petitioner and its stockholders. It is clear from said petition that the use to which said road was to be devoted was a *private* and not a *public* use. The public had no interest in said road, and the fact that it would facilitate the transportation of said timber to the steamboat landing, and the marketing of the logs did not make it a public use.

Every legitimate business, to a greater or less extent, indirectly benefits the public by benefiting the people who constitute the state, but that fact does not make such enterprises public business. We hold that so much of said Section 6307, L. O. L., as relates to the establishment of a county road from the timber land or timber of a person owning the same to some public road, steamboat landing, or railway station is unconstitutional because it, in effect, attempts to authorize the taking of private property for a private

use. We hold, also, that all of the road proceedings referred to in the answer are void. The franchise granted by the County Court of Coos County to the defendant company to construct and maintain a logging railroad along the said road of public easement pleaded in the answer, is also null and void, as it depended on the validity of the road of public easement for its validity, and, that being void, it is void also.

That portion of Section 6307 that authorizes the location of a county road from a person's residence to some other county road is not affected by this decision, as that involves a different question, and its validity has been settled by previous decisions of this court.

The road of public easement and the franchise for building and maintaining a logging road across the plaintiffs' land being invalid, the plaintiffs have a right to maintain an action of ejectment to recover their land. As suggested by Mr. Lewis, in his work on Eminent Domain, in the paragraph cited *supra,* if conditions in this state have so changed as to make it necessary to have a change in our Constitution, relating to the taking of property for private uses, the proper remedy lies in amending the Constitution, as has been done in several states.

We find that the court erred in its second, third, fourth, and fifth conclusions of law.

The judgment of the court below is reversed, and a new trial is granted to be had in accordance with this opinion.          REVERSED. REHEARING DENIED.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Burnett concur.