# CHARLESTON

CARETTA RAILWAY CO. *v.* VIRGINIA-POCAHONTAS COAL CO. *et al.*

Submitted September 11, 1906.    Decided April 26, 1907.

1. EMINENT DOMAIN—*Nature of Power—Public Use—Railroads.*
    A company organized under and pursuant to the laws governing the organization of railroad companies in this state has the power to exercise the right of eminent domain, and the taking of property necessary for its corporate purposes is for a public use. (p. 186.)

2. SAME—*Determination of Right.*
    The fact that a charter for a railroad has been granted to a corporation does not, conclusively and beyond consideration, establish the right of the corporation to take land for its use. Whether the particular corporation has such right may be passed on under all the facts and circumstances by the courts. (p. 187.)

3. SAME—*Proceedings—Evidence as to Right to Take.*

A railroad company, chartered and organized under the laws of this state, is authorized to condemn land under the power of eminent domain, and where it has filed a proper application for such purpose, and shows that it has complied with the law controlling the organization of such companies, it has the *prima facie* right to exercise such power, and it then devolves upon the owner to rebut the *prima facie* case by showing that the land sought to be condemned is not for public use.   (p. 190.)

4. SAME—*Nature of Right—Public Use—Determination.*

Private property may be taken for public use upon paying or securing to be paid, just compensation, and while the question as to whether or not a particular use is a public use is one for judicial determination, yet if a particular use is declared by the legislature to be a public one, the courts will hold such use public, unless it plainly appears not to be so.   (p. 191.)

5. SAME.

Whether a use is public or private is to be determined by the character of such use, and not by the number of persons who enjoy it, or avail themselves of it.   (p. 191.)

6. SAME—*Railroads.*

The fact that the route of a proposed railroad is through a mountainous and sparsely settled country, or that the number of persons who will use the road for the purpose of transporting freight, or for passenger service, is limited, is immaterial, provided all have a right so to use it.   (p. 191.)

Error to Circuit Court, McDowell County.

Action by the Caretta Railway Company against the Virginia-Pocahontas Coal Company and others.   From a judgment in favor of defendants, plaintiff brings error.

*Reversed.   Remanded.*

W. R. KEGLEY, RUCKER, ANDERSON, STROTHER & HUGHES and STOKES & SALE, for plaintiff in error.

S. M. B. COULLING and CHAPMAN & GILLESPIE, for defendants in error.

SANDERS, PRESIDENT:

Application was made to the circuit court of McDowell county by the Caretta Railway Company to condemn lands for the purpose of constructing a railroad, of which proper notice was given to the parties interested in the property sought to be condemned.   One of the defendants, W.F. Har-

man, appeared and filed an answer, claiming to be the owner of the land sought to be condemned, contesting the corporate existence of the plaintiff, denying that the plaintiff, by its charter, is authorized to construct and operate the line of railroad for which it is seeking to condemn the land, and denying that the land proposed to be taken is for public use. Upon the hearing the circuit court held the applicant not to be such a corporation as under the laws of this state has the power to exercise the right of eminent domain, that the proposed use of the land sought to be condemned was not a public use, and that the applicant had no right to condemn the same, and dismissed the application, and it is this judgment that we are now called upon to review.

There can be no question that a railroad company, duly organized and chartered under the laws of this state, is such a corporation as can exercise the power of eminent domain. Our statute expressly so provides, and it is difficult indeed to determine upon what theory the circuit court could find that the applicant was not such a corporation as had the right to condemn the property in question. It was duly chartered under the laws of this state as a railroad corporation, was organized as such, and had taken all the necessary steps for the purpose of acquiring the land sought to be taken, and when these things appear to have been done, the only material question involved is whether or not the use to which the land proposed to be taken is to be put is a public one.

The rights of the public in railroads organized and chartered under the laws of this state are fixed and well defined by our statute. The duties and obligations of the railroads are likewise well prescribed and defined. They are constituted public highways, for the purpose of carrying freight and passengers, which purpose they must fulfill, and as to the doing of which they have no discretion, and the compensation which they are to receive for such transportation is fixed by law, and thus the public has an established interest in such railways. They are organized and operated under and pursuant to the laws of this state, and are controlled and regulated by law. It is true that they are owned by private stockholders. All corporations are thus formed; but while this is true, and they are managed and controlled by private individuals, yet this does not rob them of their public char-

acter, nor deprive the public of the rights given them therein by statute. This Court has repeatedly held that it is a question for judicial determination as to whether or not the use for which land is to be appropriated is a public use, and that while the legislature may authorize the condemnation of property, yet the courts must at last determine whether or not the exercise of that power for that particular purpose, authorized by the legislature, is a public use. The legislature cannot, by declaration, no matter how clearly expressed, make that a public use which is essentially private. "Both reason and authority lead us to the conclusion, that the existence or non-existence of a public use in any given class of cases, in which the legislature has authorized private property to be condemned, must be determined by the courts." *Varner* v. *Martin*, 21 W. Va. 534; *Railway Co.* v. *Iron Works*, 31 W. Va. 710; *Balt. &c. R. Co.* v. *Pittsburg &c. R. Co.*, 17 W. Va. 812; *Gas Co.* v. *Lowe*, 52 W. Va. 662. A company organized under and pursuant to the laws governing the organization of railroad companies in this state has the power to exercise the right of eminent domain, and the taking of property necessary for its corporate purposes is for a public use.

We have attempted to show that it is the established rule under statutes giving and securing to the public such interests and rights as are given to them under our statute, by which railroad companies are organized and controlled, that the use is a public one. Then it remains to be determined as to whether or not the railroad corporation, in invoking the power of eminent domain, is in the lawful exercise of its corporate privileges and franchises. It is true a charter to a railroad company is not conclusive upon the question of the right to condemn land, but where a railroad company has acquired its charter, organized as provided by law, and located its railroad, it is *prima facie* entitled to condemn. As was said in the case of *Varner* v. *Martin, supra:* "Though if a particular use of it be declared by the legislature to be a public use, the courts will hold such use to be public, unless it manifestly appears that it is not a public use." *U. S.* v. *Gettysburgh Electric Ry. Co.*, 160 U. S. 668; *Woodward* v. *Central Vt. Ry. Co.*, 62 N. E. 1051. Therefore, when it appears that the applicant has complied with the provisions

of the statute, it devolves upon the land owner to show that the use for which the land is sought to be taken is not a public use.

It appears that the Caretta Railway Company is a railroad corporation, chartered and organized under the laws of this state, and that the purpose for which it seeks to condemn the land in question is that of constructing a branch line to the Iaeger and Southern Railway, and ultimately to connect the branch thus constructed with the Clear Fork branch of the Norfolk and Western Railway, or what is better known as the West Virginia and Southern Railway. The branch line, for the purpose of constructing which the land is here sought to be condemned, begins at the mouth of Barranshe creek, and extends for a distance of two miles up that creek. It is insisted that the railroad runs up Barranshe creek to a lumber camp on the lands of the Virginia-Pocahontas Coal Company, which company owns a body of about fifteen thousand acres of land, which is valuable only for its coal and timber; that if this road is constructed it furnishes transportation for the coal and timber of the Virginia-Pocahontas Coal Company to the Iaeger and Southern Railway, and by this road furnishes an outlet to market; that it is further shown that the stock of the Virginia-Pocahontas Coal Company is held to a very large extent by one George L. Carter, and that at least a majority, if not all, of the board of directors, is composed of said Carter and of clerks of said Carter in his office; that it also appears that there are two hundred and fifty shares of stock of the Caretta Railway Company, and that the same George L. Carter owns two hundred and forty-six of said shares, the other shares being held by Mr. Powell, his attorney, and three clerks in the office of Mr. Carter and Mr. Powell, and that it also appears that the majority of the board of directors are the same in both companies, and that this little railroad, only a part of which it is now proposed to construct, runs through a rough, rugged, mountainous section, very sparsely settled, and with no prospect of any development of any character, except the mining and shipping of coal and shipment of timber from the lands of the Virginia-Pocahontas Coal Company. Giving to these contentions the full weight to which they are entitled, when we add the fact that the public has the right to use this road for its

purposes, everything said against the right of the applicant to condemn this property is not sufficient to defeat that right. We must recognize that in the organization of all railroad companies and in the construction of railroad lines, there is a selfish interest. No company would organize and construct a railroad unless upon consideration it were believed to be to the best financial interest of such company to do so. It is not the interest or the welfare of the public that is considered, or looked to, in the organization of such companies, but the promoters have in view a profitable field in which to invest their capital. *Railroad Co.* v. *Traction Co.*, 56 W. Va. 18. The property of the Virginia-Pocahontas Coal Company may be developed, and the construction of the road may mean more to it than to any individual or to any other company, yet this cannot be assigned as a reason why the use to which the property is to be put is not a public use. In the case of *Railroad Co.* v. *Traction Co.*, *supra*, which is a case very similar to this, questions of this character were presented and urged as a reason why the property should not be condemned, and JUDGE POFFENBARGER, in discussing these questions, said: "The answer denies the right claimed by the bill on the ground that the plaintiff is not, and will not be, when completed, a common carrier, but a mere private coal road. To sustain this position, the defendant relies upon the shortness of plaintiff's line; its failure to make connection with any railroad except the P. W. & Ky., at the Ohio River; the fact that the Wellsburg Coal Company, a corporation, having for its stockholders the same persons who own the stock of the plaintiff railroad company, owns one thousand acres of coal land through which the railroad will be constructed and operated; and the admission of the vice-president and chief engineer of the plaintiff, that the principal object in constructing the road is to provide means for transporting the coal from the Wellsburg Coal Company's land. It further appears from the testimony of this witness, however, that the stockholders of the plaintiff intend to obtain a charter under the laws of Pennsylvania and extend the road from the state line to Tylerdale, near Washington, Pennsylvania, where connection will be made at the east end of the line with the Baltimore and Ohio and other railroads; that the entire length of the road, so extended, will be twenty-eight miles; that the road

has been graded and rails laid for a distance of three miles, commencing at the west end, and rights of way acquired for some distance beyond the grading towards the state line; that the road will be equipped with cars and coaches for the general transportation of freight and passengers; and that the road will be, in all respects, a common carrier. This evidence is uncontradicted, and nothing tends towards its overthrow except the circumstance of ownership, by the stockholders by means of corporate organization, of the coal land, and its being the principal inducement to the investment in the railroad company. But they do not exclude the intent to operate the railroad as a common carrier. The several purposes of the corporators may consistently stand together. Other motives than the mere operation of a common carrier, and other works of internal improvement, always move the people who build them, else none would ever be constructed. They constitute fields of profitable investment, direct and indirect, and have a double character which the law recognizes and upholds. For some purposes they are private and for others public, and the private rights which the stockholders and creditors have in respect to them, constitute the sole inducement to their construction and operation. For the purposes of this case, it suffices to say the evidence relied upon in support of this defense is insufficient to sustain it."

An able discussion of the question as to what is a public use is given by JUDGE GREEN, in the case of *Varner* v. *Martin, supra*. The case of *Railroad Co.* v. *Benwood Iron Works, supra*, is relied upon by the defendant in error to defeat the right to condemn. The facts in that case are so widely different from those arising in the case under consideration, as to make it of no application here. There the Wellsburg, Wheeling and Kentucky Railroad Co., which had constructed its line, and had it then in operation, filed its petition for the purpose of condemning a right of way upon which to construct a branch of its road to the property of the Wheeling Steel-Works Company. Part of the land sought to be taken belonged to the Benwood Iron Works, and it contested the right to condemn. Under the circumstances, the Court said: "Stripped of all the disguises thrown around the case of the petitioner, it clearly appears that its object is to condemn the land of the defendants for

the purpose of enabling it to lay a siding, switch, branch road or lateral work from the main track to the Wheeling Steel-Works, a few hundred feet distant, for the purpose, as stated in the original petition, 'of transporting freights to and from said steel-works over the petitioners' said railroad.'' Here we have a duly chartered corporation seeking to condemn property, not for a branch, but for its main line. The fact that its route is through a mountainous and sparsely settled country, or that the number using the road for the purpose of transporting freight, or as a passenger, is limited, is immaterial, provided all have a right so to use it. The fact that all the people of the state do not need it does not change its character as a common carrier, as in the very nature of things no railroad serves all the people, and when it serves those living along its route, or who desire to travel over it, the shortest line is as much impressed with the character of a public highway as is the longest one. "It is well established that if, in point of law, a use is public, the fact that not very many persons will enjoy the use is immaterial." *Butts &c. Ry. Co.* v. *Montana &c. Ry Co.*, 16 Mont. 514; *Talbott* v. *Hudson*, 16 Gray (Mass.) 417; *Lumbering Co.* v. *Johnson*, 30 Ore. 205, 60 Am. St. Rep. 818. The length of the line of the proposed road can have no bearing upon the questions involved, as under our statute it could be extended by simple resolution, and it is a matter of history, shown by our reports, that the Deepwater Railway Company, when chartered, extended only from Deepwater to Glen Jean, a distance of a very few miles, but the directors of that road, by availing themselves of the provisions of the statute, have extended their line until it bids fair to become one of our great trunk systems.

The judgment of the circuit court is reversed, and we render judgment in favor of the plaintiff in error upon the issue tendered by the answer of the defendant, W. F. Harman, and hold that it has the lawful right to condemn the land in question for the purpose of the construction of its railroad. And this case is remanded to the circuit court of McDowell county, for the purpose of assessing, in the manner provided by law, the compensation to be paid for the land, and for further proceedings to be had therein according to law.

*Reversed.   Remanded.*

BRANNON, JUDGE, (*dissenting.*)

From the evidence it appears The Caretta Railway Company was incorporated by this state to construct a railroad from the mouth of Barranshe creek to the Poplar Fork of Barranshe creek, a distance of only two miles; that the road, for at least half its length, runs through land of the Virginia Pocahontas Coal Company, a corporation; that the said coal company there owns a body of 15,000 acres of coal and timber land; that the railroad has one terminus on the Iaeger and Southern Railway, known as the Dry Fork Branch of the Norfolk and Western Railway, and the other at no notable place, but on land of the Pocahontas Coal Company; that the district through which the road runs is wild; that the district is not populated; that there is no certainty that it will be; that the road connects, or passes, no towns or settled districts; that there is no population along the line of the railway; that the owner of a great majority of the stock in the Pocahontas Coal Company, entirely controlling, is George L. Carter; that he owns 246 shares of $100 each of the $25,-000 capital stock of the Caretta Railway Company, a controlling power; that B. H. Davis, A. Kyle Morrison, J. Norment Powell and T. Fon Davis own each only one share, making up the 250 shares; that they are employees of the coal company; that the owners and controllers of the two corporations are the same persons, though the corporations have different names; that Carter, T. Fon Davis, Powell and Morrison are directors of the Caretta Railway Company, being four out of five; that Carter, Powell and T. Fon Davis are three out of five of the directors of the Pocahontas Coal Company; that as shown by the evidence of the president of the Caretta Railway Company, the fact that the Pocahontas Coal Company owns the timber and coal land to which the railroad runs is the chief, if not the sole, inducement for the building of the railroad; that there is no other known business for it, and but for that fact the railroad would not be thought of; that there is no population now there, or certainly to be expected, to be served by the proposed railroad; that there is no public call for its construction.    Therefore, I hold that the use for which the land is to be devoted, is not *public*, but for *private* end, and that it cannot be condemned for that use.    I hold that a charter does not, conclusively and beyond considera-

tion, entitle even a railroad corporation to use the power of eminent domain. We respect the declaration of the legislature, that a railroad corporation is entitled to exercise the right of eminent domain; but I hold, under the power of the judicial department, that it may say, in a particular instance, that the corporation is not such as is entitled to invoke this great power of the state. *Cemetery Association* v. *Redd*, 33 W. Va. 262. The railroad company gives evidence that the railroad is to be for public use, or rather that any one may use the road if he wishes. But the question is, is there a present public call for the railroad? It does not so appear. Here we may fitly quote from the case of *Railroad Co.* v. *Iron Works*, 31 W. Va. 735, a case very forcible in the present case. "The mere declaration in a petition that the property is to be appropriated to public use does not make it so; and evidence that the public will have a right to use it, amounts to nothing in the face of the fact that the only incentive to ask for the condemnation was a private gain, and it was apparent that the general public had no interest in it." In that case we also find in the syllabus, point 2, the law point that, "Evidence, that all, who wish to avail themselves of the proposed switch, branch road or lateral work, can do so, is not sufficient to show, that the use of the work will be for the benefit of the public." These principles are pointedly stated in 15 Cyc. 580-81, and *Fellsburg* v. *Alexander*, 101 Va. 98. As is said in *Charleston Gas Co.* v. *Lowe*, 52 W. Va. p. 667, the establishment of furnaces and mills and building hotels greatly interests the public, I may say that the production of coal and lumber and grain are things of public concern; "but they lie without the domain of public uses for which private owership may be displaced by compulsory proceedings." The Pocahontas Coal Company could not condemn land in its name and it resorts to a railroad charter to attain the end. On the facts I hold that the purpose for which it is proposed to condemn the land is not public, but private; that this railroad was projected, not to serve the general public, but simply and only to enable the Pocahontas Coal Company to get its coal and timber to market, and that the railroad really and truly subserves no public want or need or behest. The coal company likely failing to agree with the land owner as to price for right of way, in-

vokes the power of the state to accomplish the result which it could not accomplish by contract. The power of the state under eminent domain cannot be perverted to such use. Sacred, next to life, in this free land, is ownership of land, on which to live, from which to earn bread, in which to rest at last. The noble American Constitutions tell legislatures and courts, that private property shall be taken only to answer public need, never to subserve private need, no matter how great that private need may be.