DE PAUW UNIVERSITY et al. v. PUBLIC SERVICE COMMISSION OF OREGON et al.

(District Court, D. Oregon. December 17, 1917.)

1. WATERS AND WATER COURSES ⬅︎217—COMPANIES SUBJECT TO REGULATION AS PRIVATE CORPORATIONS—"PUBLIC UTILITY."

A corporation and its predecessor, engaged in the sale of irrigable land, which acquired a source of water supply and installed an irrigation system, entering into contracts with the purchasers to furnish water for irrigation, is not subject to regulation under the Oregon Public Utilities Act (Laws Or. 1911, p. 483), for section 1, defining a "public utility" as including corporations which shall own, operate, manage, and control any plant or equipment for the delivery or furnishing of water or power directly or indirectly to the public, does not extend the act to mere private corporations.

[Ed. Note.—For other definitions, see Words and Phrases, Public Utility.]

2. PUBLIC SERVICE COMMISSIONS ⬅︎21—INJUNCTION PROCEEDINGS—INDIVIDUALS.

Where members of a state public service commission were without authority proceeding to regulate the rates of a private corporation, which under contract with purchasers of land sold water for irrigation, the members as individuals could be enjoined from so proceeding.

3. PUBLIC SERVICE COMMISSIONS ⬅︎21—INJUNCTION PROCEEDINGS—PARTIES.

In a suit by nonresident trustees, named in a mortgage given by a local corporation to secure bondholders, against a state public utilities commission and its members to enjoin it and them from regulating rates for water charged by the corporation under contracts with purchasers of land, the mortgagor corporation is not an indispensable party, and hence the suit can be maintained in the federal court on the ground of diversity of citizenship.

In Equity. Bill by the De Pauw University, a corporation, the Luse Land & Development Company, Limited, a corporation, and others, against the Public Service Commission of Oregon and Frank J. Mil-

ler and others, as members of the Public Service Commission of Oregon and as individuals. On motion to dismiss. Motion overruled.

Carey & Kerr and Charles A. Hart, all of Portland, Or., for plaintiffs.

George M. Brown, Atty. Gen., and J. O. Bailey, Asst. Atty. Gen., for defendants.

BEAN, District Judge. This is a suit against the Public Service Commission of Oregon and the individual members thereof, brought by the trustees named in, and the holders of substantially all the bonds secured by, a mortgage or trust deed given by the J. F. Luse Company on its irrigation plant in Douglas county, to secure a bond issue of $100,000. The relief sought is an injunction restraining the enforcement of an order of the Commission fixing the rates to be charged by the Luse Company for water furnished its customers, on the ground that such order is void for want of jurisdiction. The suit is for hearing on a motion to dismiss the bill.

[1] The facts appearing in the complaint and essential to the questions for decision are that in September, 1908, the Sutherlin Land & Water Company acquired by purchase approximately 38,000 acres of irrigable land in Douglas county, with the intention of subdividing and selling the same. In order to irrigate the land, it acquired about the same time, by purchase, appropriation, and otherwise, the right to divert sufficient water from the Calipooia river and other sources. It thereupon, and during the years 1908, 1909, 1910, 1911, and 1912, constructed and completed an irrigation system, by which the water so appropriated and acquired was carried to and upon the lands, at a cost exceeding $100,000. From time to time, and as the work progressed on the irrigation system, the Land Company sold or contracted to sell to sundry persons various parcels of land and by the contract of sale undertook and agreed that in consideration of the payment of the purchase price and the performance of other stipulations by the purchasers that it would provide or cause to be provided in perpetuity water for domestic use by the purchasers and for the irrigation of the particular land covered by the contract during the irrigating season, upon the payment in advance by such purchasers of a certain stipulated rate therefor.

In November, 1912, the Sutherlin Land & Water Company conveyed to the J. F. Luse Company all of the land then remaining unsold and also its interest in uncompleted contracts of sale previously made, and the water rights and irrigation system, and the Luse Company agreed to and did assume all the debts of the Sutherlin Company and all obligations imposed upon it with respect to providing water for the parcels of land theretofore sold. The Luse Company thereupon entered into possession of the irrigation system so conveyed, since which time it has maintained such system and expended large sums of money in the installation and maintenance thereof, and has made contracts of sale for a large number of tracts of land similar to those made by its predecessor, and has in all respects complied with the terms and provisions of the contracts and conveyances

executed by it or its predecessor with respect to providing water to purchasers.

It is alleged in the complaint that at no time has the Sutherlin Land & Water Company or the J. F. Luse Company "sold or furnished or offered to sell or furnish, or held itself out as ready to furnish water to any person whatsoever other than the owners of land purchased from one or the other of such corporations," except that for a short time the Luse Company permitted the city of Sutherlin to use certain of the surplus waters while the city was engaged in securing a permanent supply for itself; but such arrangement was temporary and at all times subject to the demands and rights of the irrigation company and its purchasers.

In July, 1916, certain purchasers of land filed a petition with the Public Service Commission in which they alleged that the Luse Company was a public utility and that the amounts specified in their contracts of purchase, to be paid by them as a condition precedent to the right to use water was exorbitant, unreasonable, and discriminatory, and praying that the Commission enter an order setting aside and annulling such contracts and fixing and establishing rates to be paid by them.

The Land Company and the trustees named in the mortgage given by it to secure the bond issue appeared and denied that the Commission had jurisdiction over the matter of annulling or modifying the contracts between the irrigation company and the purchasers of land, or to fix or establish the rates to be paid by them. The Commission, however, assumed jurisdiction, and attempted to fix and establish the rates to be collected by the company at practically one-third of the amount named in the contracts previously made with the purchasers, without, as the bill alleges, any evidence being "produced or received by such commission showing or tending to show that such rates were sufficient to provide a fund requisite to enable the irrigation company to operate the system and continue to furnish water to the purchasers of the land, as required by their contracts and conveyances."

Laying aside many reasons urged in support of the bill and assuming that the Public Utilities Act applies to irrigation companies, it is clear to my mind that it can only apply to such companies as are engaged in the general sale or rental of water to all who may apply for it within a given area, and not to a private corporation that has no dealings with the public, but which merely undertakes to furnish water in fulfillment of private contracts made with certain individuals selected by it. That is all the Luse Company or its predecessor was doing or offering to do. They were not selling or offering to sell water to all who might apply therefor, and who could be served by their system, and did not hold themselves out as ready or willing to do so. They were engaged in selling certain lands owned by them, and incident thereto agreeing to furnish water to their purchasers and no others. This did not make them a public service corporation and subject to the jurisdiction of the Public Service Commission. A public utility is defined, by the act under which the right is claimed to fix the rates to be charged by the Luse Company, to include corporations, etc., who shall own, operate, manage, and control any plant or equip-

ment for the delivering or furnishing of water or power directly or indirectly to or for the public. Section 1, c. 279, Laws 1911. Now, neither the Luse Company nor its predecessor in interest come within this definition, for they were not engaged in furnishing or selling water to or for the public, but only to such parties as they might select.

The distinction between a public service irrigation company and a private concern is so fully covered by the Supreme Court of California in Thayer v. California Development Co., 164 Cal. 117, 128 Pac. 21, and Del Mar Water, Light & Power Co., v. Eshleman, 167 Cal. 666, 140 Pac. 591, 948, that it would be useless for me to attempt to add anything thereto. Nor does the Eastern Oregon Land Co. v. Willow River Co., 204 Fed. 516, 122 C. C. A. 636, or Van Dyke v. Geary, 244 U. S. 39, 37 Sup. Ct. 483, 61 L. Ed. 973, lend any support to defendants' position. The former was an action by an irrigation company to condemn land for its ditches and canals. The controlling question was whether its purpose was to serve the public within the meaning of section 6525, Lord's Oregon Laws, or a purely private undertaking. The trial court and a majority of the Court of Appeals held from the evidence that the land sought to be condemned was for the establishing of an irrigation system to serve the public by furnishing water to persons owning lands adjacent to the plaintiff's canals and ditches; and in the latter case the court says there was nothing in the record to indicate that the plaintiff was engaged in furnishing water only to the particular individuals, but rather to all residents and inhabitants within a given area.

[2] It is urged that the suit is not maintainable against the members of the Public Service Commission as individuals. If the Commission was without jurisdiction to do what it attempted to do, then the acts of its members and the subsequent steps likely to be taken, as outlined in the bill, are acts of individuals. It is therefore proper to join the Commission as a body and also its individual members. This seems to be the practice sanctioned in similar cases. Reagan v. Farmers' L. & T., 154 U. S. 363, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Minn. Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18.

[3] It is also contended that the J. F. Luse Company is an indispensable party, and should be aligned on the side of the plaintiffs, thus destroying the diversity of citizenship. This is not a suit to revise the order of the Public Service Commission, or to have determined what would be a fair and reasonable rate to be charged by such company; nor is it sought to enforce the performance of some contract or obligation of the company, or inquire into the conduct or management of its affairs. But it is a suit by the mortgagee or bondholders to enjoin threatened injury to their security. That such a suit can be maintained without the presence of the mortgagor seems settled by the authorities. Mercantile Trust Co. v. Tex. Pac. Ry. (C. C.) 51 Fed. 529; Reagan v. Farmers' L. & T., supra; Knickerbocker Trust v. Kalamazoo (C. C.) 182 Fed. 865; Carey v. Brown, 92 U. S. 171, 23 L. Ed. 469; Illinois Central v. Adams, 93 Fed. 852, 35 C. C. A. 635.

Motion to dismiss is therefore overruled.