.[No. 18729. Department One. September 23, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Clear Lake Lumber Company, Respondent,* v. E. V. KUYKENDALL *et al., Appellants.*[1]

CARRIERS (3-3)—REGULATION OF RATES—REASONABLENESS—ARBITRARY ACTION OF DEPARTMENT—EVIDENCE—SUFFICIENCY. Where the data for rate making, furnished by a carrier, is manifestly incorrect and inconsistent, the carrier should be given an opportunity to correct the same, and it is arbitrary and unlawful for the department to base rates thereon on the theory that the responsibility for the error was that of the carrier.

SAME (2, 3-1)—COMMON CARRIERS—RAILROADS—JOINT RATES WITH PRIVATE CARRIER—POWERS OF DEPARTMENT—STATUTES—CONSTRUCTION. A common carrier cannot be compelled to make joint rates with a connecting private logging road, which condemned its right of way, under Rem. Comp. Stat., § 6749, requiring such logging roads to carry the products of defendants in condemnation at reasonable

'Reported in 228 Pac. 853.

rates; since it need only give the same service as it gives to the operator of the private road.

SAME (3-3)—REGULATION OF RATES—REASONABLENESS—RIGHTS OF PRIVATE CARRIER—ARBITRARY ACTION OF DEPARTMENT. Where the average cost of transporting logs over a private logging road was $4.13 per thousand, a rate of $3 is arbitrary.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered February 13, 1924, reversing an order of the department of public works fixing rates for the hauling of logs, after a hearing to the court. Affirmed.

*Charles H. Paul* and *Alfred J. Schweppe,* for appellants.

*Stephen V. Carey* and *Thomas Smith,* for respondents.

*The Attorney General, H. C. Brodie, Assistant,* and *Thomas Balmer, amici curiae.*

TOLMAN, J.—This is an appeal from a judgment reversing an order of the department of public works in an action brought by respondents for the purpose of reviewing such order.

Appellants Davis and Flick were complainants in the original proceeding before the department, and there sought by their amended and supplemental complaint the fixing of a reasonable rate to be charged by the Clear Lake Lumber Company, the operator of a private railroad, for hauling complainants' logs over the line operated by it, and the fixing of a reasonable joint rate over such private road and the road operated by the Puget Sound & Cascade Railway Company, a common carrier. The department declined to fix joint rates, but made an order fixing a rate over the line of the common carrier, also a rate over the line of the private carrier, and directed the interchange of both

loaded and empty cars without unloading, interruption or delay between the two roads as though operated as one. The trial court set aside the rate fixed for the private carrier as insufficient and unfair, and directed the department to revise such order and fix a greater rate which shall be adequate under all the evidence; and the order for the exchange of cars was set aside as unreasonable, unlawful and void, and the proceeding dismissed as to the common carrier, without prejudice, however, to the further exercise of jurisdiction by the department over the rates to be charged by it, for the reason that the order of the department reducing its published tariffs was based upon insufficient evidence and therefore arbitrary and unlawful.

There seem to be but four questions presented by this appeal for our decision: (1) the question of rates on the common carrier line; (2) the question of joint rates; (3) the matter of the interchange of cars; and (4) what are reasonable rates on the private carrier line from the point where the traffic originates to its junction with the common carrier line.

Before going into these matters it may be well to state certain general facts which have a bearing on the various issues, and which seem to be admitted, or at least not seriously controverted.

The Puget Sound & Cascade Railway Company is a common carrier operating a railroad from Mt. Vernon through Clear Lake and easterly up the valley of the Skagit river to a station called Potts. It is alleged to be owned and controlled largely by the same interests which own and control the Clear Lake Lumber Company. The Clear Lake Lumber Company is a corporation engaged in logging and manufacturing lumber, its mill being located at Clear Lake on the line of the Puget Sound & Cascade Railway Company. It has

constructed and is operating a private line of railroad from Potts station on the line of the Puget Sound & Cascade Railway Company in a southeasterly direction up the valley of Day creek. Some three and one-half miles from Potts, this line passes through 160 acres of land owned by appellants Davis and Flick, which is heavily timbered, and it is said to have upon it some 16,000,000 feet of merchantable timber. The Clear Lake Lumber Company condemned a right of way across the Davis and Flick land, and in its complaint in the condemnation action, and in the decree founded thereon, the provisions of § 6749, Rem. Comp. Stat. [P. C. § 7660], Laws of 1913, ch. 133, p. 412, are set out and recognized.

Under this act thus recognized in the decree, appellants made application to the Clear Lake Lumber Company to fix reasonable rates for the hauling of their timber products from their land to Potts, and that company fixed a rate of $3.50 per thousand feet, the shippers to furnish their own cars, which rate was alleged to be excessive, beyond reason, and confiscatory of appellants' property. Appellants further allege that, in order to market their products, it is necessary not only that the private carrier shall haul such products to Potts, but that the common carrier shall haul them over its line from Potts to Clear Lake where they may be sold to the Clear Lake Lumber Company, or on to Mt. Vernon where connection can be made with other common carrier lines to reach available markets, and because of the alleged common ownership, and the necessary common operation in order to get the timber products to market, they claim that a joint rate should be fixed.

The department seems to have made no finding upon the question of common ownership and common opera-

tion of the two lines in the interest of the Clear Lake
Lumber Company, but throughout to have treated the
two carriers as distinct entities, and we find nothing
in the record which requires us to adopt a different
position.

The rate fixed by the department to be charged for
the services rendered by the common carrier are based
upon data found in copies of annual reports introduced
in evidence, which admittedly contain error. In its
order the department says:

"The data furnished, for example, on page 18 of the
1920 report is incomplete, and apparently in error. It
is different from the original annual report filed with
this department. For example, item 53, page 18 of
the copy of this report shows that 1,430,810 tons, pro-
ducts of the forest, were shipped as revenue freight
during the year, while the annual report furnished to
this Department received on May 14, 1921, shows this
item as being only 426,810 tons."

Other similar errors are clearly pointed out by the
department. Nevertheless, the department says:

"Under the circumstances, these errors are the fault
of the carrier, and if correct reports would justify a
different result from that arrived at herein the re-
sponsibility is on the carriers."

And proceeds, without giving any opportunity for
correction, to base a rate on the errors thus pointed
out.

The trial court, in his able memo opinion, says:

"The Department in reducing said rates based its
action largely upon the showing, or rather lack of
showing, of certain reports made by the carrier from
time to time to the Department which they say were
inconsistent and incomplete, and in summing up the
reasons for the establishment of the rate prescribed,
the Department say: 'Under the circumstances these
errors are the fault of the carrier, and if correct re-

ports would justify a different result from that arrived at herein, the responsibility is on the carrier.'

"In this, I think the Department erred. If the reports were incorrect or manifestly erroneous, the carrier should have been given an opportunity to correct or explain the same before they were used as a basis for the consideration of establishing rates. The result is that the Department has fixed rates reducing the published tariffs of the carrier without sufficient evidence to justify the position that the established rates were unfair or unjust and in this the Department's action may be considered as arbitrary and unlawful."

We can add nothing to this clear expression, and need only say that we consider the position thus taken to be unassailable.

The next two points, namely, joint rates and interchange of cars, may be considered together. It seems to be the contention of appellants that, under the act of 1913, *supra;* § 6749, Rem. Comp. Stat. [P. C. § 7660], the condemnor becomes a common carrier as far as the products of the land through which the right of way is acquired are concerned. The statute reads:

"Any person or corporation availing themselves of the provisions of this act for the purpose of acquiring a right of way for a logging road, as a condition precedent, [shall] contract and agree to carry and convey over such roads to either termini thereof any of the timber or other produce of the lands through which such right is acquired at any and all times, so long as said road is maintained and operated, and at reasonable prices; and a failure so to do shall terminate such right of way. The reasonableness of the rate shall be subject to determination by the public service commission."

It may be that such a conclusion will be reached in a case where the rights only of the landowner and the condemning private road are involved (see *State ex rel. Silver Lake R. & L. Co. v. Public Service Comm.,*

117 Wash. 453, 201 Pac. 165, 203 Pac. 3), but here the department was dealing also with the rights of a common carrier not a party to the condemnation proceedings, and required by law to maintain an adequate service for the shipping public. Can such a common carrier be required to adopt joint rates and be required to interchange its equipment with what as to it is a private carrier, and perhaps thus place an added burden upon all other shippers over its line, and hazard its equipment upon an illy constructed and dangerous road where it may be damaged or destroyed? We are of the opinion that the law contemplates that the landowner shall be fully compensated for the taking of his property in the condemnation proceedings, and that the statute quoted is designed, therefore, to put him on no more than an equality with the operator of the private road, and entitle him to no more than the same service under the same conditions over the line of the connecting common carrier. This view seems to be sustained by our previous holding in *Northern Pac. R. Co. v. Railroad Comm.*, 58 Wash. 360, 108 Pac. 938, 28 L. R. A. (N. S.) 1021, and such is the general rule. *Winters Metallic Paint Co. v. Chicago, Milwaukee & St. P. R. Co.*, 16 I. C. C. 587; *Bedford-Bowling Green Stone Co. v. Oman*, 134 Fed. 441; *Sholl Bros. v. Peoria & P. U. R. Co.*, 276 Ill. 267; *Fairview Coal Co. v. Arkansas Cent. R. Co.*, 159 Ark. 649, 252 S. W. 920.

Manifestly, therefore, the department, in acting under the statute quoted, can go no further than to direct that the common carrier shall give the same service at the same rates to appellants as it gives to the operator of the private road.

The remaining question as to the reasonableness of the rate fixed by the department on the private carrier line is one of the facts reviewable by the courts. The

department's own experts under its direction made an appraisal and rate investigation which was before it when the order complained of was entered. This report shows $4.13 per thousand as the average cost of transporting logs over the private road to Potts. This includes the amortization charges of $1.0995 per M. but no profit, and no interest charge on the investment. In fixing the $3 rate, the department, we think, arbitrarily disregarded the right of the operator of a private road to make a charge which would cover amortization, when fixed on a proper basis, as well as some interest on the money invested. Though as to profit, it may be that the statute we have already quoted does not confer the right to any in excess of a reasonable rate of interest, as against those shipping the products of the lands through which the right of way was condemned.

Finding no error, the judgment appealed from is affirmed.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.