(No. 5154.   July 6, 1929.)

AMBROSE W. CODD and JOHN V. ALLEN, a Copartnership Doing Business Under the Name and Style of CODD & ALLEN LUMBER COMPANY, Plaintiffs, v. McGOLDRICK LUMBER COMPANY, a Corporation, Defendant.

[279 Pac. 298.]

N. D. Wernette, for Plaintiffs.

Robert H. Elder and Randall & Danskin, for Defendant.

4

E. W. Wheelan, *Amicus Curiae.*

Tannahill & Leeper, *Amici Curiae.*

GIVENS, J.—This cause was formerly before this court on the question of the sufficiency of the petition (mandate) which was there sustained. (*Codd v. McGoldrick*, 46 Ida. 256, 267 Pac. 439), and is now before us for determination upon the merits, evidence responsive to the issues having been introduced before a district judge to whom the matter was referred for that purpose, the question being whether the evidence shows that the defendant should be held to be a common carrier of logs and compelled to operate as such.

The evidence shows without conflict that, for the purpose of securing the right of way through the village of Tensed and over variously privately owned farms, and across and along the highways of Benewah county, the company represented and offered that after construction it would haul, in carload lots, cordwood and the products of the farmers living adjacent to the right of way, providing the same could be done by private contract and without the defendant becoming a public carrier. At all times, though, defendant's officers and agents on the ground took the position that it would not haul logs under any terms or conditions. The defendant, in one instance, exercised the right of eminent domain to secure a portion of its right of way, a decree therein being entered in its favor after an award by commissioners under statutory proceedings.

Though no farm products have been offered for transportation, the company, through its officers, indicated at the trial that it would not haul anything for anyone.

At the time defendant was securing its right of way it represented to some of the farmers in the locality that it would furnish the materials for sidings if the farmers would construct such sidings. No sidings have been constructed, nor has defendant furnished materials for the same.

At the trial defendant urged that it had no facilities for carrying freight, since it owned only one engine and one car on which was a log loader; also that it had no facilities for loading or hauling cars for other log shippers.

Defendant built this logging road in connection with its business as a lumber company and has never operated the road as a common carrier. Is the situation above detailed, combined with the fact that the defendant exercised the right of eminent domain, sufficient to authorize a judicial determination that it is a common carrier?

In the recent case of *Michigan Public Utilities Commission v. Duke,* 266 U. S. 570, 45 Sup. Ct. 191, 69 L. ed. 445, 36 A. L. R. 1105, the supreme court of the United States said:

"It is beyond the power of the state by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the 14th Amendment."

Art. 1, sec. 14, of the Idaho Constitution is as follows:

"The necessary use of lands for the construction of reservoirs or storage basins, for the purpose of irrigation, or for rights of way for the construction of canals, ditches, flumes or pipes to convey water to the place of use, for any useful, beneficial or necessary purpose, or for drainage; or for the drainage of mines, or the working thereof, by means of roads, railroads, tramways, cuts, tunnels, shafts, hoisting works, dumps, or other necessary means to their complete development, or any other use necessary to the complete development of the material resources of the state or the preservation of the health of its inhabitants, is hereby

declared to be a public use, and subject to the regulation and control of the state.

"Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor."

In *McLean v. District Court*, 24 Ida. 441, Ann. Cas. 1915D, 542, 134 Pac. 536, the Renfro Creek Railroad, seeking to exercise the right of eminent domain, was a railroad company organized as such. The court found that the land sought therein was for use by the railroad in its business as a common carrier and that the company would operate and maintain said railroad as a common carrier. Therefore, while the court commented on the contention urged that the railroad was organized for the sole purpose of carrying logs for its own use, the finding that the railroad was organized and proceeding as a railroad, and as such was a common carrier under the statutes and the Constitution, did not decide the question involved here.

Such also was the case in *Connolly v. Woods*, 13 Ida. 591, 92 Pac. 573. The court therein decided that the Idaho & Northwestern Railway was a railroad corporation and as such a common carrier, and hence it was unnecessary to decide whether, if it were not, it would still have the right to exercise the right of eminent domain.

In *Blackwell Lumber Co. v. Empire Mill Co.*, 28 Ida. 556, Ann. Cas. 1918A, 189, 155 Pac. 680, the Blackwell Lumber Company evidently, in its organization, similar to the defendant, offered to haul the lumber of the Empire Mill Company through whose holdings it sought to condemn a right of way. The Blackwell Company evidently considered such an offer a necessary prerequisite for exercising the right of eminent domain and the court, citing the McLean case, indicated that the company could be compelled to haul the products of others in view of the fact that it had availed itself of the right of eminent domain. The court indicated that a logging road of the kind under consideration probably did not come within the provisions of art. 11, sec. 5, of the Idaho Constitution, providing that all

railroads shall be common carriers and public highways. In other words, a logging railroad was not a railroad as contemplated by that section. (See, also, ''Proceedings and Debates,'' Idaho Constitutional Convention, vol. 1, pp. 821, 874.) Furthermore it is to be noticed that in the Blackwell case Justice Budge concurred merely in the conclusion reached, while Justice Morgan dissented. It cannot be said, therefore, that the opinion as written by Justice Sullivan was a holding that before eminent domain could be exercised by a lumber company, such organization had to submit to becoming a common carrier.

In *Potlatch Lumber Co. v. Peterson,* 12 Ida. 769, 118 Am. St. 233, 88 Pac. 426, which did not involve the building of a railroad but of a boom and dam, Justice Sullivan, discussing the exercise of the right of eminent domain, said that under art. 1, sec. 14, of the Constitution, *supra,* ''it is enough if the taking tends to enlarge the resources, increase the industrial energies and promote the productive power of any considerable part of the inhabitants of a section of the state, or leads to the growth of towns and the creation of new channels for the employment of private capital and labor, as such results indirectly contribute to the general prosperity of the whole community. . . . .

''There is no doubt when a person or corporation exercises the power of eminent domain, he or it assumes certain obligations to the public, and the grant of the right of eminent domain carries with it the right of public supervision and reasonable control. The improvement of said river is not for the use of respondent alone, although under the conditions which exist it may be more benefited than others.''

The concurrence by Stockslager, C. J., in the conclusion and Ailshie, J., does not necessarily mean that they concurred in the above statements, since they could have concurred in the conclusion that the lumber company had the right of eminent domain for its sole and exclusive use on other grounds, the only question being whether the com-

plaint stated a cause of action authorizing the company to exercise the right of eminent domain.

Whether the dissertation on the right of eminent domain found in this case was the thought of the entire court is, due to the limited concurrences, perhaps questionable, but it is harmonious with the ideas expressed in the Constitutional Convention.

When art. 1, sec. 14, *supra*, was under consideration by the Constitutional Convention, the debates clearly showed that there were two questions at issue in connection therewith; 1st, whether in connection with the right of eminent domain, the Constitution could declare uses therefore generally considered private to be public uses, and 2d, whether such a declaration should be made. The discussions with reference to this question, the amendments made and the final vote show clearly that it was the intention of the Convention to do both. ("Proceedings and Debates," Idaho Constitutional Convention, vol. 1, pp. 288–367, and vol. 2, pp. 1596–1633.)

As to irrigation and mining, the section itself shows, and similar provisions have been construed to mean, that it confers the right to condemn for individual use on the theory that the development of individual property tends to the complete development of the entire state. (*Clark v. Nash*, 198 U. S. 361, 4 Ann. Cas. 1171, 25 Sup. Ct. 676, 49 L. ed. 1085; *Strickley v. Highland Boy Gold Min. Co.*, 200 U. S. 527, 4 Ann. Cas. 1174, 26 Sup. Ct. 301, 50 L. ed. 581; *Lake Koen Irr. Co. v. Klein*, 63 Kan. 484, 65 Pac. 684.) This court has previously held that under the Constitution, the exercise of the right of eminent domain did not impress irrigation or mining with the obligation of rendering service to the public as a public corporation. (*Nampa & Meridian Irr. Dist. v. Briggs*, 27 Ida. 84, 147 Pac. 75; *Marsh Mining Co. v. Inland Empire Co.*, 30 Ida. 1, 165 Pac. 1128.) Unless the Convention intended by the last clause in the first paragraph to extend a similar right to any other use necessary to the complete development of the material resources of the state, such phrase is meaningless, inasmuch as the

condemnation of property for a use recognized as public by the common law, that is, a use by the public or directly for the public, was specified by the second paragraph. No logical distinction based on the Constitution can be drawn between irrigation and mining, and logging.

The right of eminent domain is an attribute of sovereignty. Fundamentally, there are no restrictions on the exercise of this power. That is, property may be taken under eminent domain proceedings for any purpose the sovereign chooses. (*Potlatch Lumber Co. v. Peterson, supra; State v. Superior Court*, 77 Wash. 585, 137 Pac. 994.)

In some of the western states it was seen at an early date that a local situation, particularly in connection with irrigation, required that it would be necessary, in some cases, to permit the taking of private property for individual use though thereby a general ultimate benefit would indirectly accrue to the public. For instance, art. 2, sec. 14, of the Colorado Constitution provides that private property shall not be taken for private uses *except* for private ways of necessity, reservoirs, drains, flumes or ditches for agricultural, mining, milling, domestic or sanitary purposes. The next section of the same article provides for the taking of property for public uses.

Our Constitution was written and must be interpreted in the light of this historical background.

Article 1, sec. 14, contains two paragraphs. The second paragraph is a simple expression of the general rule found in the Constitution of practically every state that private property may be taken for public uses on payment of a just compensation. In a word, this second paragraph expresses the whole law of eminent domain as it had developed in this country prior to 1850 or about the time that some of the western states began to write their Constitutions. It covered the whole field of public uses and left open to be determined by the courts the question of what constituted a public use.

With the development of irrigation and mining in the west, however, it soon became apparent that the judicial

definition of a public use, as it had been defined up to that time, was too narrow for the necessities of this region. To meet the exigencies of this situation, the definition of a public use was broadened by constitutional fiat. The first paragraph of art. 1, sec. 14, of our Constitution is an expression of this policy.

What are the implications of this expanded definition of a public use as declared by our Constitution? Does the phrase "public use" mean only a use that is generally available to the public, or has it a wider connotation? In providing that the use of land for ditches, dumps, tunnels and hoisting works was to be a public use, it seems reasonable to assume that it was not intended thereby to grant the use of such facilities to any user thereof, other than the owner, who might be willing to pay a reasonable rate for the privilege. It certainly was not intended to make an individual ditch a public facility. The same is likewise true of any other use that might come under the general phrase, "for the complete development of the material resources," etc. The uses which the authors of that paragraph had in mind were individual uses,—uses affected with a public interest, it is true, but essentially and legally individual. When they wrote "public uses," they meant certain individual uses affected with a public interest. It was under this particular provision that the McGoldrick Lumber Company acted in exercising the right of eminent domain in the construction of its railroad.

The question of the right of eminent domain for logging roads or similar plant facilities has been considered in numerous cases listed in the note below.[1] In none of the

[1] *Hairston v. Danville R. Co.,* 208 U. S. 598, 13 Ann. Cas. 1008, 28 Sup. Ct. 331, 52 L. ed. 637; *North Carolina Pub. Service Co. v. Southern Power Co.,* 282 Fed. 837; *Pacific Spruce Co v. McCoy,* 294 Fed. 711; *Weidenfeld v. Sugar Run Co.,* 48 Fed. 615; *Colorado E. Ry. Co. v. Union Pac. Ry. Co.,* 41 Fed. 293; *Denver R. L. & C. Co. v. Union Pacific Co.,* 34 Fed. 386; *Inspiration Copper Co. v. New Keystone Co.,* 16 Ariz. 257, 144 Pac. 277; *Ozark Coal Co. v. Pennsylvania R. R. Co.,* 97 Ark. 495, Ann. Cas. 1912D, 1000, 134 S. W. 634; *Amador*

jurisdictions indicated were there constitutional provisions like our own. Conceding that many of such cases have decided that the right of eminent domain may not be exercised for a logging road to be used solely and exclusively by the owner thereof, such cases cannot be considered as controlling in view of the special wording of our Constitution.

In the Constitutional Convention and in the debates in connection with the use of the phrase, "the development of the material resources of the state," reference was made to what the compiler of the "Proceedings and Debates," Idaho Constitutional Convention, considers was sec. 5, 14 U. S. Stats. at Large, p. 252; sec. 43, Title 30, U. S. Code Ann., p. 326.

*Min. Co. v. Dewitt,* 73 Cal. 482, 15 Pac. 74; *Sutter County v. Nicols,* 152 Cal. 688, 14 Ann. Cas. 900, 93 Pac. 872, 15 L. R. A., N. S., 616; *Madera Ry. Co. v. Raymond Granite Co.,* 3 Cal. App. 668, 87 Pac. 27; *People v. District Court of Pitkin Co.,* 11 Colo. 147, 17 Pac. 298; *Connecticut College for Women v. Culvert,* 87 Conn. 421, 88 Atl. 633, 48 L. R. A., N. S., 485; *Dawkins Lumber Co. v. Carpenter,* 213 Ky. 795, 281 S. W. 1013; *Riley v. Louisville R. Co.,* 142 Ky. 67, Ann. Cas. 1912D, 230, 133 S. W. 971, 35 L. R. A., N. S., 636; *Kansas City etc. Ry. Co. v. Louisiana W. Ry. Co.,* 116 La. 178, 7 Ann. Cas. 831, 40 So. 627, 5 L. R. A., N. S., 512; *Paine v. Savage,* 126 Me. 121, 51 A. L. R. 1194, 136 Atl. 664; *Albright v. Sussex Lake etc. Commission,* 71 N. J. L. 303, 108 Am. St. 749, 2 Ann. Cas. 48, 57 Atl. 398, 69 L. R. A. 768; *Rhyne v. Flint Mfg. Co.,* 182 N. C. 489, 109 S. E. 376; *Cozard v. Kanawha Hardwood Co.,* 139 N. C. 283, 111 Am. St. 779, 51 S. E. 932, 1 L. R. A., N. S., 969; *Bridal Veil Lumbering Co. v. Johnson,* 30 Or. 205, 60 Am. St. 818, 46 Pac. 790, 34 L. R. A. 368; *Anderson v. Smith-Powers Logging Co.,* 71 Or. 276, 139 Pac. 736, L. R. A. 1916B, 1089; *Tennessee Coal etc. Co. v. Paint Rock etc. Co.,* 128 Tenn. 277, 160 S. W. 522; *Alfred Phosphate Co. v. Duck River Co.,* 120 Tenn. 260, 113 S. W. 410, 22 L. R. A., N. S., 701; *Dismal Swamp R. R. Co. v. Roper,* 114 Va. 537, Ann. Cas. 1914C, 641, 77 S. E. 598; *State v. Kuykendall,* 130 Wash. 674, 228 Pac. 853; *Healy Lumber Co. v. Morris,* 33 Wash. 490, 99 Am. St. 964, 74 Pac. 681, 63 L. R. A. 820; *Monetaire Min. Co. v. Columbus Mines Co.,* 53 Utah, 413, 174 Pac. 172; *Caretta Ry. Co. v. Virginia etc. Coal Co.,* 62 W. Va. 185, 57 S. E. 401; Elliott on Railroads, 3d ed., secs. 1206, 1207.

The Constitutional Convention convened July 4, 1889, and adjourned August 6, 1889. Repeated reference was made during the debates to the Colorado and California constitutions. Colorado in 1887, in *People v. District Court of Pitkin County*, 11 Colo. 147, 17 Pac. 298, and California in the same year in *Amador Min. Co. v. Dewitt*, 73 Cal. 482, 15 Pac. 74, held that under their respective Constitutions property could be taken only for a public use or for certain restricted individual uses, and the Convention evidently desired that the Constitution of this state should grant broader powers than the Constitutions of those states.

The conclusion that the Convention intended to depart from the accepted theory as to what had previously been considered public uses is strengthened by the reference made during the Convention to Judge Cooley's statement with regard to what is the result of an attempt to go beyond the earlier conception of what uses authorized the exercise of eminent domain. ("Proceedings and Debates," Idaho Constitutional Convention, vol. 2, p. 1598; Cooley's Constitutional Limitations, 8th ed., p. 1131; Nicholas on Eminent Domain, 2d ed., p. 222.)

Washington has evidently changed its attitude on this matter, first holding adverse to defendant's position, now *contra*. (*Ruddock v. Bloedel Lumber Mills*, 28 Fed. (2d) 684.)

It must be conceded, as stated in the Blackwell case, that the development of the lumber industry is a development of one of the greatest natural resources of the state. As to irrigation and mining the Constitution has been construed as giving to an individual the right to condemn property for use by him alone in connection with his individual property without such condemned property or the use thereof in any way becoming subject to use by the public or for the benefit thereof except as the individual by the development of his own property tends to develop the entire state.

The Constitution, then, by its plain terms extends such right, by making them public uses, to all other uses of similar kind and character. If they were public uses at

common law, they are covered by the last paragraph of the section of the Constitution under consideration, that is, art. 1, sec. 14; if not, they are covered by the first paragraph.

In the Blackwell case, the sole point involved was whether under the complaint the lumber company had the right to condemn land for a logging railroad. The consequences attendant on the exercise of such right here involved were there only inferentially and argumentatively considered.

It is evident from the Constitution that its framers in presenting, and the people in enacting, art. 11, sec. 5, making all railroads public highways, did not have in mind the kind of a transportation facility we are here considering.

The following statements by this court, anent a question similar in essential respects to that considered herein, appearing in *Humbird Lumber Co. v. Public Utilities Commission*, 39 Ida. 505, 228 Pac. 271, if they do not support the conclusion reached herein, are at least not out of harmony therewith:

"It was said by this court in *Stoehr v. Natatorium Co.*, 34 Ida. 217, 200 Pac. 132, that: 'To hold that a water corporation is a public utility, because it receives compensation for water owned by it and furnished to a limited number of the inhabitants of Boise, within a limited area, would be an unreasonable interpretation of the foregoing statutes. . . . .' (C. S., secs. 2392, 2396; *Allen v. Railroad Com.*, 179 Cal. 68, 8 A. L. R. 249–260, 175 Pac. 466.)

" 'A corporation becomes a public service corporation, and therefore subject to regulation as a public utility, only when and to the extent that the business of such corporation becomes devoted to a public use.' *Stoehr v. Natatorium Co.*, *supra; Thayer v. California Development Co.*, 164 Cal. 117, 128 Pac. 21.

" 'To hold that property has been dedicated to a public use is 'not a trivial thing' (*San Francisco v. Grote*, 120 Cal. 60, 65 Am. St. 155, 52 Pac. 127, 41 L. R. A. 335), and such dedication is never presumed 'without evidence of unequivocal intention.' (*Niles v. Los Angeles*, 125 Cal. 572,

58 Pac. 190.)" (*Stoehr v. Natatorium Co., supra; Public Utilities Com. v. Natatorium Co.*, 36 Ida. 287, 211 Pac. 533.)

"The test for determining whether the lumber company is a public utility would seem to depend upon whether it has held itself out as ready, able and willing to serve the public generally, or some portion thereof. The stipulation hereinbefore quoted and the evidence show conclusively that it has never done more than serve the railway company, one concern, under a private contract, and that it has never devoted its business, either wholly or partly, to the use of the public. We conclude that the lumber company was not a public utility and was not within the jurisdiction of the utilities commission. Because of this fact, the commission exceeded its jurisdiction in making order No. 475 (*Public Utilities Com. v. Natatorium Co., supra,* concurring opinion of McCarthy, J.; *Van Hoosear v. Railroad Com.,* 184 Cal. 553, 194 Pac. 1003; *Thayer v. California Develop. Co., supra; State ex rel. Danciger v. Public Service Com.,* 275 Mo. 483, 18 A. L. R. 754, 205 S. W. 36; *De Pauw University v. Public Service Commission of Oregon,* 247 Fed. 183; *Pinney v. Los Angeles,* 168 Cal. 12, Ann. Cas. 1915D, 471, 141 Pac. 620, L. R. A. 1915C, 282; *Associated etc. Co. v. Railroad Com.,* 176 Cal. 518, 169 Pac. 62, L. R. A. 1918C, 849; *Allen v. Railroad Com., supra*). . . . .

"The ultimate fact sought to be established in this proceeding was that the lumber company was a public utility. The complaint before the commission alleged that 'the said lumber company is now operating as a public utility and exercising the rights and privileges thereof. . . . . ' The lumber company according to the commission's recitation, 'denied . . . . that it has at any time or now is exercising the rights or privileges of a public utility. . . . . ' The commission found that the lumber company was operating as a public utility and directed it to 'cease and desist from the furnishing of water . . . . or in any way operating as a public utility. . . . . ' The commission has power to supervise and regulate public utilities (C. S., sec. 2450); and it

may without doubt, while acting within the scope of its jurisdiction, exercise judicial functions in determining the question before it, but the law does not authorize the commission to exercise a judicial power or make a judicial order. That power is possessed by the courts and cannot be vested anywhere else. The legislature has not and could not vest such power in the commission.''

In announcing this conclusion we expressly refrain from in any way expressing any opinion upon the rights of parties other than the owners of such logging roads in connection therewith, under the section of the Constitution under consideration and C. S., chap. 270, with particular reference to C S., sec. 7406, subd. 3, as referred to in *Portneuf Irrigating Co. v. Budge*, 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046, or in any other connection. (*Berg v. Twin Falls Canal Co.*, 36 Ida. 62, 213 Pac. 694.)

Having reached the conclusion that the evidence shows that defendant did not hold itself out as a common carrier and that under our Constitution the mere exercise of the right of eminent domain did not stamp it as such, the conclusion follows that the writ heretofore issued should be quashed.

Any expressions in the previous opinion in this case contrary to the conclusions reached herein are overruled.

Costs awarded to defendant.

Wm. E. Lee, J., and Baker and Adair, D. JJ., concur.